# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-4151

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of Minnesota. |
| | * | |
| Denise Marie Henderson | * | |
| | * | |
| Appellant, | * | |

———————

Submitted: June 23, 2005
Filed: August 1, 2005

———————

Before RILEY, BOWMAN, and BENTON, Circuit Judges.

———————

BENTON, Circuit Judge.

A jury convicted Denise Marie Henderson of five counts of wire fraud, one count of concealment from the Social Security Administration (SSA), and three counts of making false statements to SSA, in violation of 18 U.S.C. § 1343 and 42 U.S.C. § 408(a)(3), (4). She appeals, challenging the evidence, indictment, jury instruction, sentence, and jurisdiction of the district court.[1] Jurisdiction being proper under 28 U.S.C. § 1291, this court affirms.

———————

[1] The Honorable David S. Doty, United States District Court Judge for the District of Minnesota.

In 1995, Henderson was injured in a car accident. In 1996, six months before applying for social security disability income (SSDI), she flew to Russia to adopt a child. She told the social worker that she owned her own business, worked 15 to 20 hours a week, and was in good health and physically active. Weeks before applying for SSDI, she sought cosmetic surgery, informing the surgeon she had no significant past or current medical illnesses.

In 1997, Henderson applied for SSDI, telling SSA she could not work. She claimed she had: 4 to 5 migraines a week; vertigo; numbness; and could not walk, kneel, climb, bend, lift, reach, concentrate, do chores or errands, attend to personal grooming needs, drive for more than 20 minutes, or sit or stand for more than 20 minutes. The SSA denied her application initially and on appeal. While appealing, Henderson worked for her husband's company, Marketing That Works, Inc. She instructed the employees not to tell anyone she worked there. In 1999 – after Henderson testified at a hearing – an Administrative Law Judge reversed SSA, and awarded her benefits, retroactive to June 1996. Henderson promised to notify SSA if her medical condition improved or if she returned to work.

While applying for and receiving SSDI, Henderson had 21 cosmetic consultations, never alerting the doctors to any serious medical conditions. During the four years she received SSDI, Henderson competed in beauty pageants. In 1998, she made seven appearances as Mrs. Washington County and won the Mrs. Minnesota International pageant. In 1999 and 2000, she made over 200 appearances as Mrs. Minnesota. Between 1999 and 2003, Henderson also competed in Mrs. United States, Ms. U.S. Continental, Mrs. International, and All American – which required travel to Las Vegas, Nevada; Tyler, Texas; Orlando, Florida; and Pigeon Forge, Tennessee. Henderson also flew for vacations to: Acapulco, Jamaica, New Zealand and Australia in 1996; Texas and New York in 1998; Hawaii in 1999; and Cancun in 2000.

A search warrant executed at Henderson's home revealed she was operating two businesses out of her home while receiving SSDI. Police found invoices, checks, contracts, press releases, credit card receipts, and emails in Henderson's name for her businesses, Crowning Moments, Inc. (CMI) and Queen Bear's Closet (QBC). The documents disclosed that she arranged contracts, attended meetings, kept finances, solicited clients, found sponsors and conducted marketing for both enterprises. As director of CMI, Henderson directed seven pageants between 2001 and 2003. QBC was a consignment shop that sold used pageant wear.

In total, Henderson submitted eight reports to SSA stating she had a disabling condition resulting in chronic migraines, neck and back pain, numbness, and other ailments. Prior to 2003, Henderson failed to report to SSA her activities or pageant competitions. When she did list her hobbies, she stated she worked eight hours a week for CMI, and attended pageants when she felt good.

## I.

Primary jurisdiction permits a court to dismiss or stay an action in deference to a parallel administrative agency proceeding. *Jackson v. Swift Eckrich, Inc.*, 53 F.3d 1452, 1456 (8th Cir. 1995). This promotes uniformity, consistency, and the optimal use of the agency's expertise and experience. *See Access Telecommunications v. Southwestern Bell Telephone Co.*, 137 F.3d 605, 608 (8th Cir.), *cert. denied*, 525 U.S. 962 (1998). The doctrine, however, should be used sparingly, particularly where Congress has decided that the courts should consider an issue. *United States v. McDonnell Douglas Corp.*, 751 F.2d 220, 224 (8th Cir. 1984). This court appears to review primary jurisdiction de novo. *See Access*, 137 F.3d at 608; *DeBruce Grain, Inc. v. Union Pacific R. Co.*, 149 F.3d 787, 790 n.4 (8th Cir. 1998).

Henderson argues that her case should have been deferred to SSA because SSDI eligibility is a complicated, regulatory issue requiring agency expertise. Contrary to Henderson's assertion, the jury was not asked to measure Henderson's eligibility against SSA's regulations, but to decide whether she misrepresented or omitted material facts to SSA. The function of a jury is to weigh the evidence and assess the credibility of witness, particularly in cases of fraud. *See **United States v. Baumgardner***, 85 F.3d 1305, 1310-11 (8th Cir. 1996).

She also argues that the refusal to defer to SSA denied her procedural due process because she was not "heard at a meaningful time and in a meaningful manner." *See **Morrissey v. Brewer***, 408 U.S. 471, 481 (1972). She claims a further due process violation, asserting she likely would have received a favorable administrative ruling, resulting in (some) issue preclusion in her criminal prosecution.[2]

Although Henderson's administrative proceeding was not concluded before her criminal trial, she had ample opportunity to be heard at a meaningful time and place. *See **United States v. Lahey Clinic Hospital, Inc.***, 399 F.3d 1, 7-8, 12 (1st Cir. 2005); ***Ram v. Heckler***, 792 F.2d 444, 447 (4th Cir. 1986). At trial, she testified, presented evidence, and faced accusers and witnesses. Henderson's procedural rights were fully protected.

---

[2]Henderson's SSDI case was reopened on an ALJ's own motion in 2003 (before her criminal trial). The ALJ found Henderson was not disabled, and that she had received an overpayment,. Henderson has appealed that determination, which is still pending. *Henderson v. Barnhart*, No. 2005-CV-00215 (filed 1/31/05, D. Minn.). In addition, the government has sued for damages and civil penalties for the same false statements as those in the criminal trial. *United States v. Henderson*, 2004 WL 540278 (D. Minn. Mar. 16, 2004). The civil case is stayed pending this appeal.

Further, Henderson cites no statute or precedent that entitles a defendant to an administrative resolution before a criminal prosecution (even if the defendant might obtain a favorable agency decision). Finally, a district court certainly has jurisdiction of a prosecution for social security fraud. *See generally **Baumgardner***, 85 F.3d at 1305. Despite SSA's comprehensive regulatory scheme, Congress explicitly made it a crime to conceal material facts from, or make false representations, to SSA. *See* **42 U.S.C. § 408(a)(3),(4)**.

The district court properly refused to invoke the primary jurisdiction doctrine.

## II.

Henderson asserts that there was insufficient evidence to support the verdict. She complains that the government failed to prove that her businesses were "substantial gainful activity," or that she was not disabled and ineligible for SSDI benefits. **42 U.S.C. § 1382c(a)(3)(E)**; **20 C.F.R. §§ 404.1572**, **404.1520**. None of these are required elements of wire fraud, concealment or misrepresentation. She also contends that the government failed to demonstrate that she harbored any fraudulent intent or that her representations were material – which are required elements of 18 U.S.C. § 1343 and 42 U.S.C. § 408(a)(3).

Intent frequently cannot be proven except by circumstantial evidence; the determination often depends on the credibility of witnesses, as assessed by the factfinder. *United States v. Erdman*, 953 F.2d 387, 390 (8th Cir. 1992). Here, the jury may infer Henderson's intent from her conduct. *See United States v. Gravatt*, 280 F.3d 1189, 1192 (8th Cir. 2002). The government produced ample circumstantial evidence of her intent by showing inconsistencies between her statements to SSA and her conduct. She claimed she had four to five migraines a week, yet after 21 consultations, told her cosmetic surgeon she had only one or two a month. She told

SSA she could not travel, but toured the country vacationing and competing in pageants. She stated she could not concentrate, yet managed two businesses. Intent is also evident in Henderson's instruction to employees not to tell anyone she was employed. The jury could reasonably infer that Henderson intentionally misled SSA.

She also complains the government did not prove that her statements or omissions were material to SSA's decision. In federal statutes criminalizing false statements to public officials, materiality means any "natural tendency to influence, or was capable of influencing, the decision of the decision making body to which it was addressed." *Kungys v. United States*, 485 U.S. 759, 769-70 (1988); *Baumgardner*, 85 F.3d at 1307 n. 1. Henderson's statements conveyed that she was unable to work or perform any physical tasks; she did not disclose her activities, pageant competitions and travels; an SSA expert testified that Henderson's misrepresentations and concealments influenced SSA's decisions. Thus, a jury could reasonably find that the statements and omissions were material to SSA's decision.

Reviewing the evidence in the light most favorable to the verdict, and giving the government the benefit of all reasonable inferences logically drawn from the evidence, no reasonable jury could have found Henderson innocent. *See United States v. Goodson*, 155 F.3d 963, 966 (8th Cir. 1998).

III.

Henderson contends that the superceding indictment was facially defective because it was not supported by facts, and did not allege a mens rea for any count, or materiality as an element of wire fraud. This challenge is reviewed de novo. *United States v. Covey*, 232 F.3d 641, 645 (8th Cir. 2000). However, because she did not raise this issue prior to trial, the indictment is "liberally construed in favor of sufficiency." *United States v. Davis*, 103 F.3d 660, 675 (8th Cir. 1996). An indictment is sufficient if it apprises the defendant of the elements of the offenses

charged, and enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974).

The indictment here adequately apprises Henderson of the mens rea for each count. The indictment charges that for wire fraud, Henderson "devised and intended to devise a scheme and artifice to defraud." For concealment, the indictment alleges that she "with the intent to fraudulently secure payments . . . knowingly conceal[ed]," For misrepresentation to an agency, the indictment states that Henderson "knowingly and willfully . . . made false statement and representation of a material fact." The indictment does not state materiality as an element of wire fraud; however, the concept is intended in the common law definition of "scheme to defraud." *See Neder v. United States*, 527 U.S. 1, 25 (1999). An indictment need not use specific words, so long as by fair implication it alleges the charged offense. *United States v. O'Hagan*, 139 F.3d 641, 651 (8th Cir. 1998). The indictment here gave sufficient notice of the charged offenses.

As to facts, the indictment states Henderson's disabling condition as she reported it, and her actual conduct. The indictment is supported by sufficient facts. *See United States v. Just*, 74 F.3d 902, 904 (8th Cir. 1996).

The indictment here adequately charges the offenses and the facts.

IV.

Over Henderson's objection, the district court admitted evidence of her businesses, travel, pageant-competitions, and large suburban home. She asserts that because SSDI is not a means-based program, this evidence was prejudicial and irrelevant. Evidence is relevant if it tends to show that any fact is more or less probable. **Fed. R. Evid. 401**. It is generally admissible unless its probative value is

"substantially outweighed by the danger of unfair prejudice." **Fed. R. Evid. 402**, **403**. Evidence is "not unfairly prejudicial merely because it hurts a party's case." ***United States v. Emeron Taken Alive,*** 262 F.3d 711, 714 (8th Cir. 2001). The district court is given broad discretion when gauging the possibility of unfair prejudice, and is reversed only for abuse of discretion. ***United States v. Christians***, 200 F.3d 1124, 1127 (8th Cir. 1999).

Evidence of Henderson's businesses, travel, and pageants is relevant because it tends to show whether she misrepresented material facts to SSA. Henderson claimed she could not work or "keep up with reading daily mail," yet managed the businesses QBC and CMI. She averred that she could not sit or stand for more than 20 minutes and that she "doesn't go out much - riding in a car is too painful," but traveled to Acapulco, Jamaica, Hawaii, Cancun, Florida, Nevada, Texas, Tennessee, and throughout Minnesota. Henderson claimed she could not "lift, carry, cook, clean or even grocery shop without severe pain," and that "every movement causes extreme pain." Evidence of attending over 200 appearances as Mrs. Minnesota – as well as training for and competing in at least five pageants – tends to demonstrate that Henderson misrepresented and omitted material facts relevant to her physical capacity.

Finally, the government offered into evidence a photograph of Henderson's large suburban home, in order to "walk through the search warrant" with the jury. While the photograph was only tangentially relevant and somewhat prejudicial – as indicated by the government's failure to defend its admissibility on appeal – any error was harmless beyond a reasonable doubt. See ***United States v. Sprouts***, 282 F.3d 1037, 1044 (8th Cir. 2002).

The district court did not abuse its discretion.

V.

A jury instruction, taken as a whole and viewed in light of the evidence and applicable law, must fairly and adequately reflect the issues in the case. *Preston v. United States*, 312 F.3d 959, 961 (8th Cir. 2002). A district court's instruction is reviewed for an abuse of discretion and is reversed only upon a finding that the instructional error affected the defendant's substantial rights. *United States v. Gianakos*, 404 F.3d 1065, 1072 (8th Cir. 2005).

Henderson argues that the district court abused its discretion in its instruction on "materiality," which was based on the Eighth Circuit Model Criminal Jury Instruction, § 6.18.1001B (2003). She cites *Hinchey v. Shalala*, 29 F.3d 428, 432-33 (8th Cir. 1994), for the proposition that materiality means "reasonable likelihood to change the outcome" of agency decision. *Hinchey* is inapposite; it addresses the standard for reviewing new evidence after the conclusion of an agency proceeding. *Id.* at 433.

The instruction on false statement here stated: "A statement is "material" if it has a natural tendency to influence, or be capable of influencing, the decision of the Social Security Administration. However, whether a statement is "material" does not depend on whether the Social Security Administration was actually deceived or whether the Social Security Administration's decision would have been different." When instructing on federal statutes criminalizing false statements to SSA, this is proper instruction on materiality. *See Kungys*, 485 U.S. at 769-70; *United States v. Mitchell*, 388 F.3d 1139, 1143 (8th Cir. 2004); *United States v. Turner*, 189 F.3d 712, 722 (8th Cir. 1999); *Baumgardner*, 85 F.3d at 1307 n. 1. The issue of materiality was fairly and adequately presented. There was no abuse of discretion.

VI.

The district court enhanced Henderson's sentence range *from* 37 to 46 months *to* 46 to 57 months after determining she had obstructed justice. Henderson argues this enhancement violated her Sixth Amendment rights because it was not based on facts found by a jury beyond a reasonable doubt or admitted by her. *See **United States v. Booker***, 125 S.Ct. 738, 756 (2005), *citing **Blakely v. Washington***, 542 U.S. ---, 124 S.Ct. 2531, 2537 (2004). She claims that *United States v. Sdoulam*, 398 F.3d 981, 995 (8th Cir. 2005), mandates a remand for resentencing.

The *Sdoulam* case was decided before this court's en banc decision in *United States v. Pirani,* 406 F.3d 543, 550 (8th Cir. 2005) (en banc). Because Henderson objected to the enhancement at sentencing, harmless error review applies. *See **id.**,* 406 F.3d at 549-50. Harmless error is an "error, defect, irregularity, or variance which does not affect substantial rights. . . ." **Fed. R. Crim. P. 52(a)**. ***United States v. Olano***, 507 U.S. 725, 734 (1993). To establish that the sentencing error was harmless, the government must establish beyond a reasonable doubt that the error did not affect Henderson's ultimate sentence. ***United States v. Archuleta***, --- F.3d ----, 2005 WL 1513136 (8th Cir. Jun 28, 2005).

The government offers three justifications that the sentencing error was harmless. First, the ultimate sentence did not exceed the initial, non-enhanced, 37-to-46-month range. Second, "when a sentencing judge must choose between two sentencing ranges that overlap, and expressly acknowledges that it would impose the same sentence under either range, this court can be certain that an error in choosing the wrong range was harmless." ***United States v. Schlifer***, 403 F.3d 849, 854 (7th Cir. 2005)*; see also **Pirani***, 406 F.3d 551-52. Third – and most importantly – when the district court imposed its sentence of 46 months, it stated, "if the guidelines are held to be constitutional by the Court, then this will be a guideline sentence. If they're held to be unconstitutional by the Court, then I'm using the guidelines only as

a guide. . . ."  This court finds that any sentencing error was harmless beyond a reasonable doubt.  *See* **United States v. Bassett**, 406 F.3d 526, 527 (8th Cir. 2005).

Henderson argues that the "intended loss" calculation of $743,973 (based on expected benefits until retirement age) was erroneous  because the indictment did not allege an intended loss and because her benefits were terminated after an actual loss of $193,509.  This argument fails.  First, intended loss is a sentencing enhancement, which the government does not need to allege in an indictment.  *See generally* **United States v. Sample**, 213 F.3d 1029, 1034 (8th Cir. 2000).  Second, intended loss means intended pecuniary harm even if the loss cannot occur.  *See* **U.S.S.G § 2B1.1**; *see also* **United States v. Staples**, 410 F.3d 484, 491-92 (8th Cir. 2005).  Because the jury found that Henderson intended to continue receiving SSDI, when it actually ended is irrelevant to calculating the intended loss.  *See* **United States v. Rettenberger**, 344 F.3d 702, 708 (7th Cir. 2003) (loss calculation based on prospective SSDI payments until retirement age).  Finally, because the jury specifically found the amount of intended loss, there is no Sixth Amendment violation.  **Booker**, 125 S.Ct. at 749.

VII.

Henderson contends that the district court erred by denying her motion to suppress evidence seized with an overly-broad search warrant. A search warrant must state with sufficient particularity the property to be seized.  **United States v. Horn**, 187 F.3d 781, 788 (8th Cir. 1999), *cert. denied*, 529 U.S. 1029 (2000).   The degree of specificity, however, depends on the circumstances and the types of items.  **Id.**  In a scheme to defraud, "a search warrant is sufficiently particular in its description of the items to be seized 'if it is as specific as the circumstances and nature of activity under investigation permit.'" **United States v. Kail**, 804 F.2d 441, 445 (8th Cir. 1986), *quoting* **United States v. Wuagneaux**, 683 F.2d 1343, 1349 (11th Cir. 1982), *cert. denied*, 464 U.S. 814 (1983).  This court will uphold the denial of a motion to

suppress unless it rests on clearly erroneous findings of fact, or reflects an erroneous view of the applicable law. *United States v. Hill*, 386 F.3d 855, 858 (8th Cir. 2004)

The warrant stated that police could search, "Records which appear on any and all computers which are located in the house, to include the hard drive and any disks which are located in the house." After finding the warrant overly broad, the district court relied on the good-faith exception in *United States v. Leon*, 468 U.S. 897, 923-24 (1984). The court found that the police had probable cause for the search, there was no evidence of bad-faith or a biased magistrate, and the officer who requested the warrant was the same officer who executed it. Finally, in the context of the rest of the warrant, the officer had a reasonable belief that warrant was limited to the seizure of computer files and drives related to Henderson's business activities, finances and disability. *See United States v. Saunders*, 957 F.2d 1488, 1491 (8th Cir. 1992). The district court's findings are not clearly erroneous.

\* \* \*

The district court's judgment is affirmed.

_____