# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

Nos. 06-1634/2605

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Abdolhossein Rastegar, also known as | * | |
| Cyrus Rastegar, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: October 17, 2006
Filed: January 8, 2007

———————

Before SMITH, BOWMAN, and COLLOTON, Circuit Judges.

———————

BOWMAN, Circuit Judge.

Following a bench trial, the District Court[1] found Abdolhossein Rastegar guilty of using a social security number (SSN) obtained from the Social Security Administration (SSA) on the basis of false information to intentionally deceive the Internal Revenue Service (IRS). 42 U.S.C. § 408(a)(7)(A). Rastegar appeals, arguing that there was insufficient evidence to prove that he intended to deceive the IRS or

———————

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

that the Social Security Administration (SSA) assigned him an SSN on the basis of false information he provided to the agency. We affirm.

Rastegar was born in Iran on March 21, 1957, and came to the United States in 1976 to attend the University of Louisville. On October 13, 1976, Rastegar applied for an SSN, listing in the application the date and country of his birth; the name shown on his Iranian birth certificate, "Abdolhossein Rastegar"; and the names of his parents, "Abdolkarim Rastegar" and "Ehtram Azadi." The SSA assigned Rastegar the SSN 404-XX-XXXX (SSN 404).[2] After completing his freshman year at Louisville, Rastegar transferred to the University of Missouri-Rolla. Rastegar applied for a Missouri driver's license listing SSN 404 in his application, and the Missouri Department of Revenue adopted SSN 404 as Rastegar's driver's license number.

Rastegar's student visa expired upon his graduation from the university, but he did not leave the country. Instead, Rastegar moved to St. Louis, Missouri, and began working for various employers, including the Pattonville and Hazelwood school districts. Rastegar provided SSN 404 to his employers for wage-reporting purposes.

In 1990, Rastegar became a permanent legal resident of the United States under the Immigration Reform and Control Act of 1986, which granted amnesty to illegal aliens who could establish that they had resided in the country continuously since January 1, 1982. See Public. L. 99-603, Title II, § 201(a), 100 Stat. 3394 (codified at 8 U.S.C. § 1255a). On April 20, 1990, Rastegar applied for a new SSN. Rastegar testified before the District Court that he believed he had to obtain a new SSN once he regained legal status in the United States. In his 1990 application, Rastegar listed his name as "Cyrus H. Rastegar" and indicated that his full name at birth was "Hossein Cyrus Rastegar." Rastegar provided the same birth date and country as he provided

---

[2]For privacy and security reasons, the last six numbers of Rastegar's two social security cards are not shown.

-2-

in his 1976 application, but he gave a different spelling for his mother's name—"Ehteram Azad." When asked specifically in the application form whether he had previously been assigned an SSN, Rastegar answered that he had not. When instructed in the application to list any SSNs previously assigned, Rastegar left the line blank. Based on the information Rastegar provided in his 1990 application, the SSA assigned Rastegar another SSN: 486-XX-XXXX (SSN 486).

During 1991 and 1992, Rastegar continued his part-time employment with the Pattonville and Hazelwood school districts, but Rastegar did not provide these employers with his new SSN. Consequently, the school districts continued to report Rastegar's income for these years under SSN 404. Later in 1992, Rastegar accepted a position with the Illinois Environmental Protection Agency and moved to Springfield, Illinois, where he lived from 1992 to 1999. Rastegar obtained an Illinois driver's license in the name of "Cyrus H. Rastegar." Unlike Rastegar's Missouri driver's license, his Illinois driver's license did not use his SSN as his driver's license number, and Rastegar could not recall at trial whether he was required to provide an SSN in his Illinois driver's-license application. Although he had relocated to Illinois and obtained an Illinois driver's license, Rastegar maintained his residence in Missouri, and he repeatedly renewed the Missouri driver's license issued to him under SSN 404. Rastegar testified that he knew he should have surrendered his Missouri driver's license when he obtained his Illinois driver's license, but did not do so.

Rastegar left the Illinois EPA in 1999 to focus his energy on a car-sales business he had been conducting as a part-time endeavor for some years. In order to carry on this business, Rastegar had obtained a Missouri wholesale license in the 1980s under SSN 404. In 1998, however, Rastegar determined that possessing a dealer's license, as opposed to a wholesale license, would simplify his business transactions. Rastegar contacted a business associate in Alabama to assist him in obtaining an Alabama dealer's license. In connection with his application for the Alabama dealer's license, Rastegar applied for an Alabama driver's license, using SSN

486 and listing as his residence an address in Benson, Alabama, at which he admittedly did not live. In March 1999, Rastegar registered as a dealer with an auto auction in St. Louis, Missouri, using his Illinois driver's license, his Alabama dealer's license, and SSN 486.

On July 9, 2004, Special Agent Lillia Wensink of Immigration and Customs Enforcement (ICE) contacted Special Agent Thomas Brady of the SSA's Office of Inspector General to discuss Wensink's suspicion that SSN 404 and SSN 486 were being used by a single person. Thereafter, Brady began an investigation by accessing the SSA's database for information regarding the two SSNs, ordering certified copies of the applications submitted to the SSA for issuance of the two SSNs, obtaining bank and tax records for both SSNs, and gathering other relevant information. Brady learned that SSN 404 had been issued to an "Abdolhossein Rastegar," whose date of birth was March 21, 1957, and whose mother's name was "Ehtram Azadi," and that SSN 486 had been issued to a "Hossein Cyrus Rastegar," whose date of birth was also March 21, 1957, and whose mother's name was "Ehteram Azad." Brady also learned that Rastegar had obtained a Missouri driver's license under SSN 404 and had renewed this license even after applying for and receiving SSN 486. Moreover, Brady discovered that over the period Rastegar had been renewing his Missouri driver's license under SSN 404, he also had obtained Illinois and Alabama driver's licenses under SSN 486. The tax records Brady obtained revealed that Rastegar had used SSN 486 to file his 1999 and 2000 tax returns, and that he had signed both returns "Cyrus H. Rastegar." The Form W-2 submitted to the IRS by the Illinois EPA to report wages paid to Rastegar in 1999 listed SSN 486. Based on his investigation, Brady concluded that "the two individuals with the two different names and the two different Social Security numbers were one and the same person." Trial Tr. at 10.

On April 26, 2005, Brady and other federal agents interviewed Rastegar at the St. Louis auto auction. When asked for identification, Rastegar provided a resident alien card issued in the name "Hossein Cyrus Rastegar," an Illinois driver's license

-4-

issued in the name "Cyrus Rastegar," and a social security card for SSN 486 in the name "Hossein Cyrus Rastegar." During this interview, Rastegar explained that he had applied for a new social security number after becoming a permanent United States resident because he thought his prior illegal status had rendered his old number—SSN 404—invalid. Rastegar also told Brady that after he was assigned SSN 486, he stopped using SSN 404.

On May 2, 2005, Rastegar went to the SSA office in St. Louis and spoke with a claims representative about "linking" the two SSNs. Rastegar explained that his wages had been reported under the two numbers and that he wanted to link the numbers in the SSA system. The claims representative completed the necessary paperwork.

On July 21, 2005, a grand jury returned an indictment charging Rastegar with violating 42 U.S.C. § 408(a)(7)(A) by "knowingly and . . . with an intent to deceive, and for the purpose of filing a federal income tax return for the year 2000, [using] a Social Security account number assigned to him by the Commissioner of the [SSA] . . . based on false information furnished by the defendant." Appellant's App. at 4. After a bench trial, the District Court found Rastegar guilty and sentenced him to a one-year term of probation and a $2,000 fine. Rastegar appeals, arguing that the government presented insufficient evidence to prove that he intended to deceive the IRS when he filed his 2000 tax return or that he was assigned SSN 486 based on false information he provided to the SSA.

We review a challenge to the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences in favor of the verdict. United States v. Spears, 454 F.3d 830, 832 (8th Cir. 2006). We will reverse only if no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Id. Given this strict standard of review, we will

-5-

reverse a verdict based on insufficiency of the evidence only in "'rare cases.'" United States v. Lee, 356 F.3d 831, 836 (8th Cir. 2003), cert. denied, 541 U.S. 1092 (2004).

Rastegar first argues that the evidence was insufficient to prove that his failure to disclose SSN 404 in his 1990 SSN application caused the SSA to assign him SSN 486. At trial, the government called Special Agent Brady to testify regarding the customary operations of the SSA and the effect Rastegar's failure to disclose SSN 404 in his 1990 application had on the SSA's decision to assign Rastegar SSN 486. Describing his background and qualifications, Brady stated that he had been employed by the SSA's Office of Inspector General for over ten years, that he was charged with investigating allegations of fraud involving SSA programs, that he was familiar with the workings of the SSA, and that SSA policies and procedures were intended to prevent individuals from fraudulently obtaining or using multiple SSNs. In response to cross examination by Rastegar's attorney, Brady specifically testified, "Had [Rastegar] provided the correct information [in his 1990 application], there wouldn't have been a second Social Security number issued." Trial Tr. at 51.

Rastegar contends that Brady was not qualified to testify regarding the workings of the SSA. Thus, according to Rastegar, the government did not present sufficient evidence to prove that the SSA assigned Rastegar SSN 486 based on the false information he submitted to the agency in his 1990 application. Because Rastegar did not object to Brady's competence to testify regarding the SSA's practices, we review this claim for plain error. See United States v. Olano, 507 U.S. 725, 731–32, 735 (1993) (holding that only obvious errors affecting the defendant's substantial rights and the fairness, integrity, or public reputation of judicial proceedings warrant reversal). Brady was a long-term employee of the SSA's Office of Inspector General and he was familiar with the workings of the agency as a result of that employment. Brady testified that his job description included "investigat[ing] allegations of fraud involving programs of the [SSA]." Trial Tr. at 9. Given Brady's background, his specialized experience, and our deferential standard of review, we

cannot say that the District Court plainly erred in permitting Brady to testify regarding the effect Rastegar's inaccurate 1990 application had on the SSA's decision to assign Rastegar SSN 486.

Rastegar asserts that even if Brady was qualified to testify regarding SSA matters, his testimony failed to prove that the SSA would not have assigned him SSN 486 had he accurately disclosed in his 1990 application that the SSA had previously assigned him SSN 404. In other words, Rastegar contends that the government failed to prove that his statements were material to the SSA's decision to assign him SSN 486.

We addressed a similar materiality argument in United States v. Henderson, 416 F.3d 686 (8th Cir. 2005), cert. denied, 126 S. Ct. 1343 (2006), where the defendant was charged with, inter alia, making false statements to the SSA in order to secure continued disability payments in violation of 42 U.S.C. § 408(a)(3) and (4). In Henderson, the defendant represented to the SSA that she suffered four or five migraine headaches a week, could not travel, and could not concentrate. 416 F.3d at 690. The SSA established, however, that the defendant told her cosmetic surgeon that she suffered only one or two migraines a week, that she toured the country vacationing and competing in beauty pageants, and that she managed two businesses. Id. The defendant in Henderson argued that the government failed to prove that her false statements or omissions were material to the SSA's decision to award benefits. Id. at 692. We noted that to establish the "materiality" of the defendant's statements, the government need only show that the statements had a "'natural tendency to influence, or [were] capable of influencing, the decision of the decision making body to which [they were] addressed,'" a standard the government easily met based on the evidence of the defendant's misrepresentations. Id. at 692 (quoting Kungys v. United States, 485 U.S. 759, 769–70 (1988)); see United States v. Trent, 949 F.2d 998, 999 (8th Cir. 1991) (interpreting 18 U.S.C. § 1001's general prohibition against, inter alia, making false statements to a United States agency and noting that "there need be no proof that

the agency actually relied on the false statement: 'The test of materiality involves only the *capability* of the statement to influence the agency's operation'" (citation to quoted case omitted)), <u>cert. denied</u>, 505 U.S. 1209 (1992).

We see no reason to interpret "materiality" for purposes of § 408(a)(7)(A) any differently. Brady testified—and Rastegar admitted—that Rastegar stated in the 1990 application that he had not previously been assigned an SSN. This evidence, coupled with Brady's testimony that the SSA maintained a policy against assigning an individual multiple SSNs in an effort to prevent fraud, was sufficient to show that Rastegar's failure to disclose SSN 404 had a "natural tendency to influence" the agency's decision to assign Rastegar SSN 486. Furthermore, Brady's testimony that the SSA would not have assigned SSN 486 to Rastegar had the agency known that SSN 404 had already been assigned to him established not only that Rastegar's false statement was *capable* of influencing the SSA's decision, but that the false statement *in fact* influenced the agency's decision to assign Rastegar SSN 486. We conclude that the government presented sufficient evidence for a reasonable trier of fact to find that the SSA assigned Rastegar SSN 486 on the basis of false information Rastegar provided to the agency.

Rastegar next asserts that the government presented insufficient evidence to establish that he possessed the requisite intent to deceive when he used SSN 486 to file his 2000 tax return with the IRS. We disagree. Although we have not considered the proof necessary to establish "intent" for purposes of § 408(a)(7)(A), in <u>Henderson</u> we interpreted "intent" for purposes of § 408(a)(4). We noted that because intent is often difficult to prove directly, it may be proven by circumstantial evidence alone. <u>Id.</u>; <u>see</u> <u>United States v. Perez-Campos</u>, 329 F.3d 1214 (10th Cir. 2003) (interpreting the intent element of 42 U.S.C. § 408(a)(7)(B) and affirming conviction where government proffered only circumstantial evidence of intent); <u>United States v. McCormick</u>, 72 F.3d 1404, 1406–07 (9th Cir. 1995) (affirming defendant's conviction for fraudulent use of an SSN in violation of 42 U.S.C. §408(g)(1)—later redesignated

as 42 U.S.C. § 408(a)(7)—based on circumstantial evidence of intent that included defendant's failure to disclose in his application for an SSN that he had previously been assigned an SSN). Here, the government presented evidence that Rastegar used different names to apply for SSNs in 1976 and 1990, used SSN 404 and SSN 486 concurrently, falsely indicated on his 1990 SSN application that he had not previously been assigned an SSN, obtained an Alabama driver's license and registered as an auto dealer under SSN 486 during the period he was renewing his Missouri driver's license under SSN 404, and continued to receive wages and reporting documents from the Pattonville and Hazelwood school districts under SSN 404 after he was assigned SSN 486. From this evidence, circumstantial though it may be, a reasonable trier of fact could infer that Rastegar possessed the requisite intent to deceive when he used SSN 486 to file his 2000 tax return.

Rastegar argues that because he provided some accurate information on his 2000 tax return, such as his address, and because use of SSN 486 on his 2000 tax return would result in a loss of benefits under SSA programs, he could not have possessed the necessary intent to deceive. We disagree. The fact that Rastegar provided some accurate information in his 2000 tax return does not excuse his use of SSN 486, which was assigned to him on the basis of false information he provided to the SSA. See Perez-Campos, 329 F.3d at 1216–17 (concluding that evidence was sufficient to establish that the defendant intended to deceive government agents even if the defendant provided the agents with some accurate information). Likewise, the fact that Rastegar arguably stood to lose SSA benefits by filing his 2000 tax return using SSN 486 does not justify his use of a fraudulently obtained SSN. See id. at 1217 (noting that even if the *actual* effect of using a false SSN was to facilitate law enforcement efforts, it does not follow that this was the *intended* effect; the defendant's scheme could simply have backfired).

Having carefully reviewed the evidence in the light most favorable to the verdict, we conclude that there was sufficient evidence from which a reasonable trier

of fact could have found Rastegar guilty of violating 42 U.S.C. § 408(a)(7)(A). Accordingly, we affirm the judgment of the District Court.

_____