# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3451

_____

United States of America,

        Appellee,

v.

Donald Robinson,

        Appellant.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the Eastern District
\*  of Missouri.
\*
\*
\*

_____

Submitted: June 17, 2010
Filed: August 18, 2010

_____

Before MURPHY, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

After a bench trial, the district court[1] convicted defendant Donald Robinson of six drug-related counts, and sentenced him to 423-months' imprisonment. Robinson now raises four issues on appeal, and we affirm.

_____

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

## I.    BACKGROUND

Robinson's objections arise out of two separate searches of his rural Missouri home in 2007.  First, on January 23, 2007, state law enforcement officers, acting under a valid search warrant, raided Robinson's residence and workshop.  In the workshop, officers found pills used to manufacture methamphetamine, a glass bong, a glass pipe used for smoking methamphetamine, digital scales, plastic bags and twist ties, marijuana, $250 in cash, a crystalline substance (Exhibit 3-D), and a liquid substance in a Coca-Cola bottle (Exhibit 10-B).  In close proximity to these items, officers found a loaded .22 caliber revolver, a loaded .22 caliber rifle, a loaded .12 gauge shotgun, two .30 caliber magazines, night vision binoculars, an operational security monitor, and three surveillance cameras.  Officers also searched Robinson's master bedroom wherein they found a glass smoking device, a .30-06 rifle, a .30-06 magazine, .30-06 ammunition, and six unloaded firearms.  Officers field-tested the crystalline substance, which tested positive for methamphetamine, drained the liquid contents of the Coca-Cola bottle into six laboratory bottles, and sent all of the samples to the lab for analysis.

On June 27, 2007, federal and state law enforcement officers executed a second search of Robinson's residence pursuant to a valid search warrant.  In the master bedroom, officers discovered a safe containing digital scales, a substance resembling methamphetamine (Exhibit 24-B), a bag containing what appeared to be methamphetamine (Exhibit 24-E), pseudoephedrine pills, $250 in cash and two handwritten "buy lists."  Officers also found a loaded .22 caliber revolver on top of a dresser approximately six-feet from the safe, and a rifle in a gun cabinet.  On the kitchen counter officers found and seized another revolver and a plastic bag containing a substance resembling methamphetamine (Exhibit 32). Exhibits 24-B, 24-E and 32 were sent to the lab for testing.

The federal grand jury returned a six-count indictment against Robinson. Based on the January raid, Robinson was charged with maintaining a drug-involved premises (Count I), possession with intent to distribute more than fifty grams of methamphetamine (Count II) and possession of at least one firearm in furtherance of a drug trafficking crime (Count III). Based on the June raid, Robinson was charged with maintaining a drug-involved premises (Count IV), possession with the intent to distribute more than five grams of methamphetamine (Count V) and possession of a firearm in furtherance of a drug trafficking crime (Count VI).

At trial, the government called two forensic chemists to testify as to the nature of the various seized substances. First, the government called Patricia Dougherty to testify as to the nature and contents of the substances seized during the January raid. Over defense counsel's chain-of-custody objection, Dougherty testified that she personally tested Exhibits 3-D and 10-B and that both contained methamphetamine. Second, the government called Sean Brooks to testify about the nature of the substances seized during the June raid. Brooks had not tested the substances himself but worked in the same lab as Adam Benne, the chemist who performed the testing. Prior to trial, Robinson's counsel stipulated that Brooks could testify on Benne's behalf. Based on Benne's lab notes and reports, Brooks testified that Benne had used proper methods and procedures to conclude that Exhibits 24-B, 24-E and 32 all contained methamphetamine. Robinson's counsel noted on the record that he thought he "stipulated to [Brooks's testimony] by mistake, but that's fine." Robinson made no objection to Brooks's testimony.

The government also called Robinson's wife, Virginia, to testify at trial. She testified that Robinson had exclusive access to the workshop and the safe in the master bedroom. She also explained that Robinson was involved in cooking, selling, and using methamphetamine, particularly in the workshop. Finally, Virginia testified that Robinson used the firearms for hunting, target practice, and to protect the premises,

but that she had never seen Robinson carry a weapon while dealing methamphetamine.

After a two-day bench trial, the district court convicted Robinson on all six counts. At sentencing, the court sentenced Robinson to concurrent 63-month sentences on Counts I, II, IV and V; a mandatory consecutive 60-month sentence on Count III (first firearm in furtherance violation); and a mandatory consecutive 300-month sentence on Count VI (second firearm in furtherance violation) for a total of 423-months' imprisonment. On appeal Robinson argues (1) there was insufficient evidence to support his June-based firearm-in-furtherance charge (Count VI), (2) the district court violated his Sixth Amendment confrontation rights in allowing Brooks to testify on Benne's behalf, (3) a proper chain of custody was not established as to Exhibits 10-B and 3-D and (4) his 300-month sentence under Count VI constitutes cruel and unusual punishment under the Eighth Amendment.

## II. DISCUSSION

### A. Sufficiency of the Evidence on Count VI

Robinson first challenges the sufficiency of the evidence to support his June-based conviction for possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). "We review a challenge to the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences in favor of the verdict." United States v. Rastegar, 472 F.3d 1032, 1035 (8th Cir. 2007). And "[w]e will reverse only if no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." Id.

"To establish that a defendant possessed a firearm in violation of § 924(c), the Government must prove that '(1) he committed a drug trafficking crime, and (2) he possessed a firearm in furtherance of that crime.'" United States v. Garcia-Hernandez,

530 F.3d 657, 662 (8th Cir. 2008) (quoting United States v. Rolon-Ramos, 502 F.3d 750, 757 (8th Cir. 2007)). Robinson maintains that there was insufficient evidence to prove that he possessed a firearm "in furtherance" of the June-based drug trafficking crimes–maintenance of a drug premises (Count IV) and possession with intent to distribute methamphetamine (Count V). We disagree.

To satisfy the "in furtherance of" element of § 924(c), "the government must present evidence from which a reasonable [trier of fact] could find a 'nexus' between the defendant's possession of the charged firearm and the drug crime, such that this possession had the effect of 'furthering, advancing or helping forward' the drug crime.'" United States v. Sanchez-Garcia, 461 F.3d 939, 946 (8th Cir. 2006) (quoting United States v. Hamilton, 332 F.3d 1144, 1149-50 (8th Cir. 2003)). Thus "[a] defendant's simultaneous possession of drugs and a firearm, standing alone, is insufficient to sustain a conviction." United States v. Hilliard, 490 F.3d 635, 640 (8th Cir. 2007). Indeed, there must be evidence that "the defendant's possession of the firearm facilitated the drug crime, through evidence that the firearm was used for protection, was kept near the drugs, or was in close proximity to the defendant during drug transactions." Id. (quotation omitted).

Robinson maintains that such evidence is lacking. In particular, Robinson emphasizes the fact that Virginia testified that Robinson used the guns for hunting, target practice, and that she had never seen Robinson carry a weapon while dealing methamphetamine. Though this testimony is certainly relevant to our inquiry, we do not believe it forecloses a conclusion that Robinson used the guns for drug purposes as well. Indeed, Virginia also testified that Robinson used the guns to protect the premises. Since one of Robinson's convictions was for maintenance of a drug premises (Count IV), Virginia's testimony as to Robinson's use of the guns supports his § 924(c) conviction. And, contrary to Robinson's contention, the government also presented evidence from which the trier of fact could independently conclude beyond a reasonable doubt that Robinson used the guns seized in June in furtherance of the

indicted drug trafficking crimes. Specifically, the government presented evidence that the firearms were located near (1) the seized methamphetamine, (2) drug trafficking/manufacturing paraphernalia and (3) $250 in cash. Additionally, the government offered the testimony of Detective Sergeant Grellner, an expert in the manufacture, distribution, and use of methamphetamine, as well as the use of firearms in connection with methamphetamine related crimes.[2] Sergeant Grellner testified that in his expert opinion, persons involved with methamphetamine are often paranoid about police raids and about their associates informing on or stealing from them. According to Sergeant Grellner, such paranoia leads to the conclusion that firearms are "tools of the trade for meth dealers," and the similar conclusion that Robinson possessed the guns seized in the June raid for protecting his methamphetamine distribution.

Here, the loaded .22 revolver's proximity–within six feet–to saleable quantities of methamphetamine, digital scales, and pills used to manufacture methamphetamine coupled with Sergeant Grellner's expert testimony regarding the use of firearms in methamphetamine trafficking could lead a reasonable trier of fact to conclude that Robinson possessed that weapon to protect his methamphetamine trafficking activities. See Sanchez-Garcia, 461 F.3d at 947 (affirming a § 924(c) conviction under similar facts). Accordingly, the evidence presented by the government was sufficient to establish the nexus that Robinson possessed a firearm in furtherance of the charged drug trafficking conduct.

## B.    Confrontation Clause

Robinson next avers that the district court violated his Sixth Amendment confrontation rights when it admitted Brooks's testimony about Benne's lab report. "The confrontation clause bars the admission of testimonial statements made by

---

[2]The defense stipulated as to Sergeant Grellner's expertise in these areas.

witnesses outside of court, unless the witnesses are unavailable and the defendant had a previous opportunity to cross examine them." United States v. Lee, 374 F.3d 637, 644 (8th Cir. 2004). Robinson contends that pursuant to Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009), Benne's lab report analyzing Exhibits 24-B, 24-E and 32 was testimonial and therefore inadmissible without providing Robinson an opportunity to cross-examine Benne. However, whether Robinson is correct that pursuant to Melendez-Diaz Benne's lab reports are inadmissible without Robinson having an opportunity to cross-examine Benne is not a question we need to decide today because Robinson waived his confrontation rights.

"A defendant may waive his confrontation rights . . . by stipulating to the admission of evidence," Lee, 374 F.3d at 649, or "by fail[ing] to object to the offending evidence," Melendez-Diaz, 129 S. Ct. at 2534 n.3. Here, it is undisputed that Robinson's trial counsel stipulated to the admission of Brooks's testimony regarding Benne's lab report. "Counsel may waive an accused's constitutional rights for tactical reasons . . . . [unless the] defendant has not personally waived nor acquiesced in an attempted waiver by counsel." Lee, 374 F.3d at 650. Robinson maintains that though his trial counsel stipulated to Brooks's testimony, Robinson himself did not personally waive or acquiesce in counsel's attempted waiver. We disagree. Where the defendant is "aware of the stipulation . . . [and does] not object to the stipulation in court," we presume that he has acquiesced in his counsel's stipulation. Id. Here, Robinson's counsel stipulated to the evidence prior to trial, and Robinson made no objection. Then, at trial, Robinson's counsel again stipulated to the evidence saying "I think I stipulated to that by mistake, but that's fine." And, again, Robinson made no objection. Without making his objection known, we presume that Robinson acquiesced in his counsel's stipulation. Thus, we find no error in the district court's admission of the evidence.

## C.    Chain of Custody

Next, Robinson contends that the court abused its discretion when it admitted, over defense counsel's objection, Patricia Dougherty's testimony that Exhibits 3-D (crystalline substance) and 10-B (liquid substance in the Coca-Cola bottle) contained methamphetamine.  Robinson argues that the government failed to establish a chain of custody showing that these two exhibits were in the same condition at the time she tested them as they were when they were seized.  Under our precedent, we are compelled to find no error in the admission of Dougherty's testimony regarding the nature of these exhibits.

We review a district court's rulings on the admission of evidence for abuse of discretion.  United States v. Miller, 994 F.2d 441, 443 (8th Cir. 1993).  "Where a . . . physical object is offered as evidence in a criminal prosecution, an adequate foundation for the admission of that object requires testimony first, that such object is the same object which was involved in the alleged incident, and that the condition of that object is substantially unchanged."  Id.  "The district court may admit a piece of physical evidence if it is satisfied that there is a reasonable probability [that] such evidence has not been changed or altered."  Id.  And, under our precedent, "the integrity of such evidence is presumed to be preserved unless there is a showing of bad faith, ill will, or proof that the evidence has been tampered with."  Id.

Here, Detective Lucas, the agent who seized the challenged evidence, testified that at the time of trial both substances were in the same condition as he found them in Robinson's residence with the slight exception that both were packaged in lab containers.  And, Dougherty testified that the two exhibits were the exhibits she actually tested.  Since there was no evidence that "the police officers or laboratory employees tampered or altered the evidence, the officials are entitled to the

-8-

presumption of integrity."[3]  Id. at 443-44; see also Melendez-Diaz, 129 S. Ct. at 2532 n.1 (noting that the government need not call every possible witness "whose testimony may be relevant in establishing the chain of custody" and "gaps in the chain [of custody] normally go to the weight of the evidence rather than its admissibility." (alteration in original) (internal quotation omitted)).  Accordingly, the district court did not abuse its discretion in admitting the evidence based on the reasonable probability that the exhibits had not been altered prior to testing.

## D.      Cruel and Unusual Punishment

Finally, Robinson asserts that the mandatory minimum 300-month (25-year) sentence for his June-based § 924(c) conviction constitutes cruel and unusual punishment in violation of the Eighth Amendment.  We review de novo an Eighth Amendment challenge to a sentence.  United States v. Wiest, 596 F.3d 906, 911 (8th Cir. 2010).

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" Ewing v. California, 538 U.S. 11, 20 (2003) (quoting Harmelin v. Michigan, 501 U.S. 957, 996-97 (1991) (Kennedy, J., concurring)).  Robinson contends that because he has no prior criminal history, the mandatory minimum sentence of 300-months on his June-based § 924(c) conviction fails proportionality review.  We disagree.

---

[3]Robinson maintains that, contrary to our conclusion, there was evidence that overcame the presumption of integrity.  Namely, Robinson highlights the fact that Detective Lucas testified he seized Exhibits 3-D and 10-B from the workshop and that in the same workshop he seized checks.  However, Detective Lucas failed to note that he seized checks anywhere on his inventory list.  While such evidence might suggest a lack of chain of custody as to the allegedly seized checks, we fail to see how such evidence suggests that either Exhibit 3-D or 10-B was altered.

Under 18 U.S.C. § 924(c)(1)(A) and (C), Robinson's first conviction for a § 924(c) offense required a sentence of not less than five years and the subsequent conviction required a sentence of at least twenty-five years. See Wiest, 596 F.3d at 911 ("The 'second or subsequent' conviction can occur in the same proceeding."). And, pursuant to § 924(c)(1)(D)(ii), all § 924(c) convictions must be served consecutive to one another and to Robinson's other criminal counts. Notably, "[n]o circuit has held that consecutive sentences under § 924(c) violate the Eighth Amendment." Wiest, 596 F.3d at 912.

Although it is true that Robinson has no significant criminal history, his sentence is based on two separate raids conducted six months apart in which officers found loaded firearms in close proximity to drugs, cash, and drug trafficking paraphernalia. The evidence from each raid independently supports Robinson's two § 924(c) convictions. Accordingly, § 924(c) commands that Robinson be sentenced to a mandatory minimum of 300-months for a second § 924(c) violation regardless of the presence or absence of other criminal history. In light of the severity of the harm to society posed by possessing guns in furtherance of drug trafficking crimes and the evidence substantiating a finding that Robinson, within a six-month period, twice possessed firearms in furtherance of his drug-trafficking crimes, we conclude that Robinson's 300-month sentence for the second of these § 924(c) violations is not grossly disproportionate to his crimes. See United States v. Angelos, 433 F.3d 738, 752 (10th Cir. 2006). Accordingly, his sentence is affirmed.

## III.   CONCLUSION

For the foregoing reasons, we affirm the district court's conviction and sentence.

_____