# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3633

_____

United States of America

*Plaintiff - Appellee*

v.

Mark Joseph Morris

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: May 7, 2015
Filed: July 31, 2015
[Unpublished]

_____

Before GRUENDER, BENTON, and KELLY, Circuit Judges.

_____

PER CURIAM.

Mark Joseph Morris appeals after he pled guilty to three robbery offenses and was found guilty by a jury of three firearm offenses. Having jurisdiction under 28 U.S.C. §1291, this court affirms.

Morris pled guilty to two counts of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), and one count of robbing a store by threats or violence, in violation of 18 U.S.C. § 1951. A jury convicted him of three counts of possessing a firearm in furtherance of the robberies, in violation of 18 U.S.C. § 924(c)(1)(A). The district court[1] sentenced him to 870 months in prison.

Morris argues that the evidence is insufficient to establish that he carried a firearm—rather than a BB gun—during the robberies. This court reviews sufficiency of the evidence de novo, "viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences in favor of the verdict." *See United States v. Robinson*, 617 F.3d 984, 988 (8th Cir. 2010) (noting reversal is appropriate "only if no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt").

For each firearm conviction, an eyewitness testified to seeing a real handgun. *See United States v. Stenger*, 605 F.3d 492, 504 (8th Cir. 2010) ("[A] defendant's possession of a firearm may be established solely by eyewitness testimony."). Officer Shipley also testified, concluding from surveillance videos that the guns in the robberies appeared similar to each other and to a real handgun. Morris attempted to undermine the eyewitnesses by questioning their levels of certainty that the guns were real firearms. But the jury believed the eyewitnesses, supported by Officer Shipley. *See id.* ("The fact that the witnesses were not weapons experts or that they did not inspect and verify the authenticity of the gun does not preclude conviction for use of a firearm."). *See also United States v. Ireland*, 62 F.3d 227, 230 (8th Cir. 1995) ("It is the jury's job to judge the credibility of witnesses . . . ."). The evidence is sufficient to support a reasonable jury's conclusion that Morris possessed a firearm in connection with each robbery. *See United States v. Bowers*, 638 F.3d 616, 619 (8th

---

[1]The Honorable Greg Kays, Chief Judge, United States District Court for the Western District of Missouri.

Cir. 2011) ("The possibility that a gun is fake does not prevent a reasonable jury from determining the gun was real.").

Following careful review of the record and the parties' remaining arguments on appeal, this court finds no error. *See* 8th Cir. R. 47B. First, Morris's guilty pleas to the robbery counts were voluntary and in compliance with Federal Rule of Criminal Procedure 11. Second, there was no reversible error related to the trial evidence and jury instructions, nor did the prosecution implicate Morris's double jeopardy rights. Third, there was no sentencing error. *See United States v. Abrahamson*, 731 F.3d 751, 751-52 (8th Cir. 2013) (per curiam) (noting that enhancements based on fact of prior conviction are exception to general rule that facts increasing mandatory minimum penalties must be presented to jury), *cert. denied*, 134 S. Ct. 1565 (2014).

This court declines to consider on direct appeal the ineffective-assistance claims Morris has raised. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) (when claims of ineffective assistance of trial counsel are asserted on direct appeal, appellate court ordinarily defers them to 28 U.S.C. § 2255 proceedings).

The judgment is affirmed. Morris's pending motions are denied. Counsel's pending motion to withdraw is granted, subject to counsel informing Morris about procedures for seeking rehearing or filing a petition for certiorari.

KELLY, Circuit Judge, concurring in part, dissenting in part.

I dissent from the court's decision to affirm the jury's verdict on two of the three firearm charges under 18 U.S.C. § 924(c)(1)(A). I recognize the proper deference given to a jury verdict. See United States v. Robinson, 617 F.3d 984, 988 (8th Cir. 2010). In this case, however, I respectfully disagree with the court's

description of the evidence as sufficient to support the jury's verdict on the first and third of Morris's firearm charges. I concur on the other issues presented on appeal.

Morris pleaded guilty to the robberies but faced three charges of possession of a firearm in furtherance of the robberies—one charge per robbery. None of the purported firearms were recovered, so they were not admitted into evidence. And the government presented only one eyewitness in support of each firearm charge. The first eyewitness, Holly Meyers, was working on the day of the robbery as a teller when the first bank was robbed. She testified that Morris slid her a note and had "just kind of showed a gun that was in his belt" by lifting up his shirt to reveal the handle of the gun. She testified that the gun appeared to be real and not a BB gun. She had shot a pistol before. Though she saw only the handle, she said the gun was an "all black" handgun, not a revolver. On cross-examination, Meyers agreed that she had seen the handle of the gun for only one second. She later failed to identify Morris from a photo line-up, though she had seen his face for between 20 and 26 seconds. She also conceded it was possible she was mistaken about the gun being real.

Vanessa Britain testified about the second robbery, which took place at the Walgreens where she worked. Britain testified that a man had stuck a gun in her chest when she opened the register during a transaction. The gun, she said, was a handgun that had wear on the top "where the slide is and the shells eject out." The barrel of the gun left a bruise on her chest; based on that mark, she estimated that the gun was maybe a .22 caliber handgun, "but no bigger than a 9-millimeter." She testified that she was familiar with revolvers, handguns, and other firearms and had fired those weapons for at least 10 years. Britain testified that the gun looked real when she first saw it and felt "very heavy and made of metal" when pressed against her chest. Britain also misidentified Morris from a photo line-up, though she later correctly identified him in state court. She felt, "to the best of [her] knowledge," that the gun was real.

Testifying about the third robbery, which took place at a different bank, was Lauren Irving. She testified that during the robbery, a man had pulled a black handgun from his waistline and placed it on the counter, pointed at her. The encounter, she said, was "[v]ery brief," but the gun looked real. Irving had not personally handled a gun but said her good friend owns one, "so I have seen what a real handgun looks like." She said she would not have given the man money if the gun was a toy or a BB gun. On cross-examination, Irving read from a summary of an interview she had with police regarding the robbery; according to the summary, Irving told the officer she "did not get a good look at the gun" but could tell it was black. Irving also testified that she has not seen or handled BB guns fashioned to resemble real guns. She agreed it was possible she was mistaken about the nature of the gun. Irving also was unable to identify Morris in a photo line-up.

The jury also heard testimony from two clerks who worked at a Price Cutter store that had been robbed in a similar fashion as the two banks and the Walgreens. Neither of those clerks testified about the three robberies to which Morris pleaded guilty. Officer Kevin Shipley, who had investigated all five robberies, testified that the guns seen in the surveillance footage from each robbery looked real and similar to each other because each was black and appeared to have the same "physical shape."

If all this evidence were taken together to establish possession of a firearm in furtherance of a single robbery, it would likely be sufficient to sustain a conviction. See United States v. Stenger, 605 F.3d 492, 504 (8th Cir. 2010) (concluding evidence was sufficient to support § 924(c)(1)(A) conviction when four bank employees testified about gun used during single robbery). But in this case, Morris was charged in three separate robberies, not just one; and each of the robberies occurred at a separate location on separate dates during a two-week span. The evidence to support each of the three firearm convictions was the testimony of a single eyewitness and the conclusion of Officer Shipley that the gun used in each had a similar shape—of a

handgun—and a similar color—black. Of those three eyewitnesses, only Vanessa Britain arguably established that the gun used in the robbery was a real handgun. She said she had a decade of experience handling and firing handguns and revolvers, she felt the gun used in the robbery pressed against her chest, and she saw wear on the gun that a toy or BB gun would not have. Her testimony, though uncorroborated, was likely sufficient to sustain the firearms charge for that one robbery. See United States v. Tillman, 765 F.3d 831, 834 (8th Cir. 2014) (noting that uncorroborated testimony of a single witness can be sufficient to sustain conviction). I concur in the court's conclusion that this evidence, while not overwhelming, was sufficient to support a conviction on this count.

But the same cannot be said of the other two convictions. Holly Meyers saw only the handle of the gun and for only one second. Her only previous experience with guns was when she had fired one pistol. And she later misidentified Morris in a photo line-up, though she had seen him for at least 20 seconds. Lauren Irving had only a brief encounter with Morris when he robbed the bank where she worked, and she told police afterwards that she had not gotten a good look at the gun. Nor has she seen BB guns fashioned to look like real guns. And like Meyers, Irving failed to identify Morris in a photo line-up. Even adding in Officer Shipley's conclusion that—based on what he saw in the surveillance videos—the gun used in these two robberies appeared to have the same color and shape, I cannot agree that a reasonable jury could have concluded, beyond a reasonable doubt, that each gun met the definition of "firearm" under 18 U.S.C. § 921(a)(3).

Nor were there other suggestions that the gun was real, such as clicking sounds from a round being chambered or confessions by Morris about the gun's authenticity, see United States v. Dobbs, 449 F.3d 904, 911 (8th Cir. 2006), or descriptions of the gun as "heavy" in sound or feel, see United States v. Kirvan, 997 F.2d 963, 966 (1st Cir. 1993). While "[t]he possibility that a gun is fake does not prevent a reasonable jury from determining the gun was real," the government still has the burden of

proving this element beyond a reasonable doubt. <u>United States v. Bowers</u>, 638 F.3d 616, 619 (8th Cir. 2011) (concluding that government met burden of proof that gun was real because, though guns used in robbery were never recovered, defendant "confessed in writing to using firearms in the robberies").

I do not question the sincerity of the eyewitnesses' testimony. Nor do I doubt the eyewitnesses were genuinely in fear or that they testified at trial to the best of their memories and based on their perceptions under the circumstances. But these are not the questions that must be answered when addressing a challenge to the sufficiency of the evidence to sustain a conviction. The statute at issue requires that, before a person may be found guilty of possessing a firearm in connection with a crime of violence, the government must prove that the person, in fact, possessed a firearm as that term is defined under § 921(a)(3). And proof of this element of the offense must be established, like all other elements of the offense, beyond a reasonable doubt. Viewing the evidence in a light most favorable to the government, and drawing all reasonable inferences in favor of the verdict, I believe we are still left with insufficient evidence to support the conclusion that whatever Morris possessed during the first and third robberies met the federal definition of firearm. This is not a case in which the government put on convincing evidence that the firearms were real, and the defendant simply tried to plant a suggestion in the jury's mind that they were not. Instead, the government failed in the first instance to offer evidence sufficient to prove this element of the offense beyond a reasonable doubt. Because I believe Morris's convictions on these two counts, and their corresponding 25-year consecutive sentences, should be reversed, I respectfully dissent.

―――――――――――――――――