PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2846
_____

UNITED STATES OF AMERICA

v.

ERIC HOLMES,

Appellant

_____

On Appeal of a Decision of the United States District Court
for the Western District of Pennsylvania (Crim. No. 07-13J)
District Judge: Kim R. Gibson

_____

Submitted under Third Circuit L.A.R. 34.1(a)
April 16, 2010

Before: SLOVITER and HARDIMAN, *Circuit Judges*,
and POLLAK, *District Judge*.[*]

(Filed:   June 7, 2010)

_____

OPINION

_____

---

[*]  Honorable Louis H. Pollak, Senior Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

POLLAK, *District Judge*

I.

On April 10, 2007, prison officers searched defendant-appellant Eric Holmes, an inmate serving time at the federal correctional institute in Loretto, Pennsylvania, for possession of a firearm in furtherance of a drug crime. The search revealed that Holmes was carrying his prison identification card in his pocket at the time. Secured with adhesive tape to the back of Holmes's identification was a folded playing card, which contained the blade from a utility knife – a razor blade roughly two-and-a-half inches in length. Based on this discovery, Holmes was charged with one count of possessing a weapon in a prison in violation of 18 U.S.C. § 1791. Holmes was convicted of that charge by a jury, and on June 9, 2009, the district court sentenced him to a term of twenty-four months in prison for the offense.

On appeal, Holmes raises three challenges to his conviction. First, he contends that the evidence at trial was insufficient for the jury to conclude that the utility knife blade was a weapon within the meaning of § 1791. Second, Holmes argues that, properly construed, the statute requires the government to prove that Holmes knew that the blade was a weapon. By contrast, the district judge instructed the jury that the government needed to prove only that (1) Holmes knowingly possessed the utility knife blade, and (2) the blade was a weapon. Finally, Holmes argues that the district judge erroneously declined to charge him with misdemeanor possession of a "prohibited object," a crime that Holmes believes is a lesser included offense of the charged felony. For the reasons that follow, we will affirm Holmes's conviction.

II.

18 U.S.C. § 1791 renders it unlawful for any "inmate of a prison [to] make[], possess[], or obtain[], or attempt[] to make or obtain, a prohibited object." *Id.* § 1791(a)(2). The term "prohibited object" includes six categories of items, and the

2

severity of the punishment for a statutory violation is tied to the category of prohibited object.  *Id.* §§ 1791(b) & (d)(1).  Holmes was convicted for possessing an object prohibited by § 1791(d)(1)(B), which covers, among other things, "weapon[s] (other than . . . firearm[s] or destructive device[s])."[1]

Holmes's sufficiency of the evidence argument on appeal is based on two proposed definitions of the word "weapon" in § 1791.  Holmes suggests that a weapon must be defined as either (1) "an object whose primary use is in combat as in to harm or threaten," or (2) an object that is "inherently" a weapon, and not something that merely becomes a weapon when employed in a specific way.  Holmes, however, proffered – and the district court adopted – a very different definition of "weapon" for purposes of instructing the jury.  Pursuant to that instruction, the jurors were told that "[w]hat is a weapon is a question of fact for you alone to decide."  App'x 439.   The jury was further instructed that it could

---

[1]     18 U.S.C. § 1791 provides in relevant part as follows:

(a) Whoever . . .(2) being an inmate of a prison, makes, possesses, or obtains, or attempts to make or obtain, a prohibited object; shall be punished as provided in subsection (b) of this section.

(b) The punishment for an offense under this section is a fine under this title or . . . (3) imprisonment for not more than 5 years, or both, if the object is specified in subsection (d)(1)(B) of this section; . . . and (5) imprisonment for not more than 6 months, or both, if the object is specified in subsection (d)(1)(F) of this section. . . .

(c) . . .

(d) As used in this section[,] (1) the term "prohibited object" means . . . (B) . . . a weapon (other than a firearm or destructive device), or an object that is designed or intended to be used as a weapon or to facilitate escape from a prison; . . . and (F) any other object that threatens the order, discipline, or security of a prison, or the life, health, or safety of an individual . . . .

3

consider in reaching [its] determination *any pertinent aspect of the item*, including the general purposes for which the item can be used, whether the item had a legitimate purpose or practical function, the manner in which the item was carried, and other factors which [it] believe[d] are important in reaching [its] conclusion.

*Id.* (emphasis added).

The definitions Holmes asserts on appeal ascribe much narrower meanings to "weapon" than the jury instruction. Because Holmes himself proposed the instruction given by the district court,[2] however, the invited error doctrine prevents him from challenging on appeal the definition that was provided to the jury. *See United States v. Ozcelik*, 527 F.3d 88, 97 (3d Cir. 2008); *United States v. W. Indies Transp., Inc.*, 127 F.3d 299, 310-11 (3d Cir. 1997). We accordingly decline to consider whether the definitions Holmes now advances are correct.

We instead review the trial record to determine whether the evidence was sufficient to sustain a conviction using the definition of "weapon" provided to the jury. Our review is plenary, and we view the evidence at trial in the light most favorable to the prosecution, the verdict winner. *United States v. Miller*, 527 F.3d 54, 60 (3d Cir. 2008). We will overturn a conviction for insufficient evidence only if "no rational trier of fact could have found [the defendant] guilty beyond a reasonable doubt." *United States v. Johnson*, 302 F.3d 139, 149 (3d Cir. 2002).

---

[2] The instruction received by the jury differed from that proffered by Holmes in only one respect: The original proposal included "any manner in which the item may have been altered from the original condition or appearance" as an expressly legitimate consideration. This phrase was deleted by the district court, presumably because it concluded that the government had provided insufficient evidence in support of the theory that the blade was prohibited because it was "designed . . . to be used as a weapon." 18 U.S.C. § 1791(d)(1)(B).

4

The evidence at trial permitted the jury to draw five conclusions which are collectively more than adequate to sustain the conclusion that the utility knife blade was a weapon. First, blades are restricted items in the prison; they are only given to inmates upon presentation of a tool pass at the prison toolroom, and then only as part of a complete utility knife. Second, Holmes had no legitimate use for a utility knife – let alone a utility knife blade – on the morning he was searched. He had not presented a tool pass to the toolroom clerk, was not given a work assignment that morning by his supervisor, and was sitting with several other idle inmates at the time the prison officers arrived to search him. Third, Holmes lied to the officers who searched him, telling them that he had nothing in his pocket and was not carrying anything sharp. Fourth, Holmes was carrying the blade in a surreptitious manner, suggesting that it was for illicit purposes and not for work. Finally, the officers who searched Holmes expressed the belief that the blade, separated from a utility knife handle, constituted a weapon. On the basis of this evidence, a rational jury could have concluded that the blade was a weapon and convicted Holmes. We accordingly reject his challenge to the sufficiency of the evidence at trial.

III.

The text of § 1791(a)(2) includes no scienter requirement. It simply provides that "[w]hoever[,] being an inmate of a prison, makes, possesses, or obtains, or attempts to make or obtain, a prohibited object[,] shall be punished as provided in [§ 1791(b)]." Holmes and the government nevertheless agree that, in keeping with the general common-law rule, a scienter requirement should be implied. *See Staples v. United States*, 511 U.S. 600, 605 (1994). More specifically, the parties agree that only knowing conduct will violate the statute. They part ways, however, on what conduct must be knowing. The government asserts, and the district court held, that under the circumstances presented here, the statute only requires knowing possession of an object, which object is prohibited under one of the prongs of § 1791(d)(1). Holmes, by contrast, argues that he could only violate the statute if he knowingly possessed an object he knew was a weapon. Our consideration of this question is guided by

5

our "'construction of the statute and . . . inference of the intent of Congress,'" *Staples*, 511 U.S. at 605 (quoting *United States v. Balint*, 258 U.S. 250, 253 (1922)), and because the issue is one of statutory interpretation, our review is plenary. *United States v. Introcaso*, 506 F.3d 260, 264 n.3 (3d Cir. 2007).

Section 1791(d)(1)(B) defines "prohibited object" to mean, in part, "a weapon (other than a firearm or destructive device), or an object that is designed or intended to be used as a weapon." There are, in other words, three categories of prohibited weapon-like objects under the statute: (1) those that are actual weapons, (2) those that may not be weapons, but are designed to be used as weapons, and (3) those that may not be weapons, but are intended to be used as weapons. Holmes's scienter theory thus reduces to the proposition that the government was required to prove that he knew the utility knife blade was an actual weapon within the meaning of § 1791.

We reject this argument for three interrelated reasons. First, Holmes makes no attempt to find support for his argument in the text or structure of § 1791(a) or § 1791(d). Second, whether or not an inmate knows an item is a weapon is a primarily linguistic matter disconnected from any conceivable congressional concerns related to the presence of weapons in correctional institutions. And third, we cannot ignore the fact that § 1791 applies only to federal prisons: As the Fourth Circuit has held in the context of a prior version of § 1791, "[a] federal penal institution has particular needs, and statutes designed to regulate articles being introduced into such institutions must be scrutinized in light of those needs." *United States v. Chatman*, 538 F.2d 567, 569 (4th Cir. 1976). "[P]rison safety and security" are very high on that list of needs, *id.*, and prison security is threatened each time an inmate possesses an object like a razor blade, whether or not the inmate knows the blade fits within the dictionary definition of the word "weapon."

This is not, of course, to say that any inmate in possession of a weapon has automatically violated § 1791. As Holmes rightly points out, application of the statute to every inmate who is found with a weapon could criminalize innocent conduct. To

6

use an example provided by Holmes, if one inmate hides a shank in the pocket of a coat being worn by a second inmate, who believes that his pockets are empty, the second inmate (1) possessed a weapon, but (2) should not be seen as in violation of § 1791. The government's reading of the statute, however, is entirely consistent with this conclusion. The government concedes that it must demonstrate that the inmate *knowingly possessed* the object that is a weapon, and it is precisely knowing possession that is missing in the hypothetical case of the coat-wearing prisoner.

The difference between the government's position and Holmes's position is better illustrated by positing a prisoner who is handed a shank by an inmate and believes, quite sincerely, that the shank is not a weapon. Despite this prisoner's sincerity, such conduct is, in light of the need for safety and security, not at all innocent in the prison setting. Accordingly, while we agree that a *mens rea* requirement should be implied where the failure to do so would criminalize innocent conduct, *see Staples*, 511 U.S. at 610, the government's interpretation of § 1791 does not violate that rule of construction.

The Supreme Court decisions relied on by Holmes also do not compel acceptance of his view of § 1791. Four of those cases concerned statutes that contained the word "knowingly." Because the scienter requirement in § 1791 is, by contrast, implied, the cases Holmes cites are inapposite insofar as they rest on textual analysis of the statute. *See Flores-Figueroa v. United States*, 129 S. Ct. 1886 (2009); *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994); *Liparota v. United States*, 471 U.S. 419 (1985); *Morissette v. United States*, 342 U.S. 246 (1952). A closer analogy is provided by *Staples v. United States*, 511 U.S. 600 (1994), which also interpreted a statute that was silent as to *mens rea*. Many of the Court's concerns in *Staples* are, however, absent here. *Staples*, for instance, rests in part on the Court's unwillingness to criminalize innocent conduct – a concern we have already found absent here. *See Staples*, 511 U.S. at 614-15; *see also X-Citement Video*, 513 U.S. at 72; *Liparota*, 471 U.S. at 426. We further note that, unlike the gun-owning petitioner in *Staples*, Holmes, as an

7

inmate, should have been aware that his possession of potential weapons was "likel[y]" subject to "strict regulation." 511 U.S. at 611. And while the *Staples* Court did suggest that crimes resulting in lengthy prison terms should generally be knowing offenses, *Staples* itself recognizes that a knowing *mens rea* need not apply to every element of every crime, even if that crime results in imprisonment. *See id.* at 409 ("[D]ifferent elements of the same offense can require different mental states."); *see also United States v. Freed*, 401 U.S. 601 (1971) (declining to attach a scienter requirement to a different element of the statute at issue in *Staples*). We conclude that, in this case, the potential severity of the punishment for possessing a weapon in prison is counterbalanced by the need for safety and security and, standing alone, does not justify the *mens rea* requirement sought by Holmes.[3]

For these reasons, we reject defendant's argument that he could only be convicted if the jury found that he knew the utility knife blade was a weapon.

---

[3] The decisions of our sister circuits cited by Holmes are also consistent with our holding. *United States v. Fox*, 845 F.2d 152 (7th Cir. 1988) (en banc), held that a prior version of § 1791, which made it unlawful to possess a "weapon or object that may be used as a weapon," was violated when an inmate "knowingly or intentionally possessed an object that could have been used as a weapon." *Id.* at 155. Applying that formulation to an actual weapon results in the conclusion that a conviction is proper if the inmate knowingly possessed an object that was a weapon. *Fox* therefore supports the government's position. In contrast, the courts in *United States v. Rodriguez*, 45 F.3d 302, 306 (9th Cir. 1995), and *United States v. Perceval*, 803 F.2d 601 (10th Cir. 1986), had no occasion to consider the argument proffered by Holmes. Both simply stated that, as to possession of a weapon (or, in the case of *Perceval*, a weapon-like object), knowledge and not intentionality was the proper *mens rea* standard. *See Rodriguez*, 45 F.3d at 306; *Perceval*, 803 F.2d at 603; *accord United States v. Rojas-Flores*, 384 F.3d 775, 779 (9th Cir. 2004).

IV.

Holmes's last argument is that he should have been charged with what Holmes sees as the lesser included offense of possessing "any other object that threatens the order, discipline, or security of a prison, or the life, health, or safety of an individual." 18 U.S.C. § 1791(d)(1)(F). A violation of that provision is certainly a *lesser* offense than a violation of § 1791(d)(1)(B): The former results in a maximum prison term of six months, whereas the latter can lead to up to five years in prison. *See id.* §§ 1791(b)(3) & (5). To be a lesser *included* offense, however, "the elements of the lesser offense" – a violation of § 1791(d)(1)(F) – must be "a subset of the elements of the charged offense" – a violation of § 1791(d)(1)(B). *Schmuck v. United States*, 489 U.S. 705, 716 (1989). "This standard involves a textual comparison, looking solely to the elements of the two offenses; inferences arising from the evidence and similarities as to the interests served by the statutes are not relevant." *United States v. Mosley*, 126 F.3d 200, 203-04 (3d Cir. 1997). Our review of this issue is again plenary. *Id.* at 201.

Holmes argues that a conviction for possessing a weapon under § 1791(d)(1)(B) includes all of the elements for a conviction under § 1791(d)(1)(F). His view is that a violation of § 1791(d)(1)(F) has three elements – (1) the defendant is an inmate (2) possessing an object (3) that threatens prison security or an individual. Similarly, Holmes sees three elements to a violation of § 1791(d)(1)(B) – (1) an inmate (2) possessing an object (3) that is a weapon. Because a weapon is an object that may threaten the order, discipline, or security of a prison, or the life, health, or safety of an individual, Holmes asserts that he could not have violated § 1791(d)(1)(F) without also violating § 1791(d)(1)(B).

Holmes's argument, however, omits a cardinal word from § 1791(d)(1)(F). That subsection, which is a catch-all provision following five other enumerated categories of prohibited objects, applies only to "any *other* object that threatens the order, discipline, or security of a prison, or the life, health, or safety of

9

an individual." 18 U.S.C. § 1791(d)(1)(F) (emphasis supplied). We cannot ignore the use of the word "other," which operates to expressly exclude items discussed in the other subsections of § 1791(d)(1) from the ambit of (d)(1)(F). Among the items so excluded, of course, are the weapons forbidden by (d)(1)(B). A violation of § 1791(d)(1)(F) is, in other words, not a lesser included offense of a § 1791(d)(1)(B) violation, but rather a lesser crime involving a categorically distinct type of object.[4] We therefore reject Holmes's argument. Accordingly, we will affirm the judgment of the district court.

---

[4] Our decision in *United States v. Burnett*, 870 F.2d 953 (3d Cir. 1989), is not to the contrary. Although the trial court in *Burnett* had given a lesser-included-offense instruction in circumstances similar to those at issue here, we remanded because the verdict form used to convict the defendant was ambiguous. In doing so, we expressly left it to the district court "to determine anew . . . whether, if requested, a lesser included offense charge is required." *Id.* at 955.