NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3669
_____

UNITED STATES OF AMERICA

v.

NATALYA SHVETS,
                    Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-12-cr-00112-002)
District Judge:  Honorable Eduardo C. Robreno
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 17, 2015

Before:  AMBRO, HARDIMAN, and SLOVITER, Circuit Judges.

(Opinion filed:  November 20, 2015)

_____

OPINION[*]
_____


        SLOVITER, *Circuit Judge*.

    Natalya Shvets appeals her conviction for conspiracy to commit health care fraud

in violation of 18 U.S.C. § 1349 and for health care fraud in violation of 18 U.S.C.

---

        [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

§§ 1347 and 2.[1]  A jury found Shvets guilty of conspiracy and seven substantive health care fraud offenses. She now argues that the District Court committed reversible error based on the instruction given to the jury as to the meaning of "willfully" under § 1347. (Gov. Br. 3; PSR ¶ 2.)

Shvets argues that § 1347 requires "proving defendant's knowledge of the statutes alleged to make her conduct criminal," and, furthermore, that the "knowingly and willfully" element attaches to a separate provision defining "health care benefit program[s]" as those which "affect[] commerce."  Appellant's Br. at 15-16 (citing 18 U.S.C. § 24(b)).

For the following reasons, we will affirm.

## I.    Background

On March 21, 2012, a federal grand jury in the Eastern District of Pennsylvania indicted Natalya Shvets, along with four other defendants, on conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349, as well as multiple substantive counts of health care fraud in violation of 18 U.S.C. §§ 1347 and 2.  (App. 23-39.)  On March 25, 2014, the jury convicted Shvets as charged.  (App. 1823-25.)

The charges concerned Shvets' employment as a nurse for Home Care Hospice, Inc. ("HCH"), a for-profit provider of hospice services.  (App. 23.)  HCH received insurance reimbursements for "providing home care and in-facility care to purportedly

---

[1] The District Court had subject matter jurisdiction over the case pursuant to 18 U.S.C. § 3231.  We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

terminally ill patients with life expectancy prognoses of six months or less." App. at 23. In particular, Medicare paid more for patients reported as requiring "continuous care," defined as at least eight hours of service per day with a majority of the care provided by a nurse. 42 C.F.R. § 418.302.

According to the indictment and testimony elicited at trial, Shvets (along with other nurses at HCH) agreed to create false records documenting continuous care claims (Gov. Br. 6-7, App. 592-600.) and subsequently prepared numerous fictitious schedules and nursing notes, for which she was individually paid $20 per hour. (App. 434, 443-52.) In total, HCH received $253,196 as a result of the conspiracy in which Shvets participated. (Gov. Br. 7, PSR 17.)

At trial, defense counsel moved for a Rule 29(a) judgment of acquittal, arguing that the Government "ha[d] to show that [Shvets] actually did something which she knew that the law forbids" and that Shvets "ha[d] to know of those provisions in order to violate them." App. at 1581, 1583. Defense counsel analogized the healthcare fraud statute to structuring, wherein the Government "ha[s] to show not only knowledge that it's illegal to structure, . . . to prevent a bank from filing a currency transaction report, but moreover, that [the defendant has] specific knowledge that the regulations make it illegal for [the defendant] to do that." App. at 1583.

The Government opposed the Rule 29(a) motion, arguing that "the healthcare fraud statute does not require that the [defendant] . . . have a complete understanding of what the Medicare . . . regulations embrace." App. at 1583-84. Defense counsel

3

conceded that "if 'willfully' is just defined as knowledge that you[r] conduct was wrong, bring it to the jury," and acknowledged that if the pattern Third Circuit instruction on "willfulness" applied, the Rule 29 motion would be defeated. App. at 1584.

Subsequently, defense counsel again admitted that "if it's general willfulness, . . . I think they get to the jury." App. at 1594-95. He also noted the legislative history of § 1347, which included a Congressional "conflict report" regarding the Senate's addition of "willfully" to the statute. App. at 1595-96. The District Court clarified that, in essence, defense counsel was arguing that a 2010 amendment to § 1347 (defining willfulness) amounted to "a substantive change" and that the issue therefore, was "whether or not [the change was meant to] simply . . . clarify or whether . . . it filled in a gap." App. at 1596.

Following additional discussion, defense counsel stated that he now believed that the government's willfulness instruction "get[s] to the jury." App. at 1609. He continued, "We did the research . . . . It was a clarifying amendment. . . . So they have to show what I call general willfulness, an intent to disregard or disobey the law." App. at 1609. The Court ultimately denied the defendant's Rule 29 motion. (App. 1614.)

The Court then turned to the arguments regarding jury instructions. (App. 1627.) The Court noted that the parties agreed to the use of Third Circuit Model Jury Instructions 5.02 ("Knowingly") and 5.05 ("Willfully"). The Government then argued for the inclusion of optional language in pattern instruction 5.05: "Willfully does not require proof that the actor know of the existence and meaning of the statute making his

4

conduct criminal." App. at 1637. Defense counsel replied, "Well, judge, I agree." App. at 1638. Defense counsel continued, "That was the whole point of that legislative history research I did on the 2010 amendment. . . . That just codifies the question if we have to go over the statute specifically, and if you do, you get charged on it, and if you don't you don't." App. at 1638. The Court adjourned the hearing and brought the jury in for closing arguments. (App. 1638-39.)

The Court delivered the following instructions to the jury on the willfulness:

[T]o find Natalya Shvets acted willfully, you must find that the evidence proved beyond a reasonable doubt that she acted with a purpose to disobey or disregard the law. 'Willfully' does not, however, require proof that Natalya Shvets had an evil motive or a bad purpose, other than the purpose to disobey or disregard the law. 'Willfully' does not require proof that the act toward the defendant in this case knew of the existence and meaning of a statute making her conduct criminal.

App. at 1773-74.

The jury convicted Shvets of all charges. (App. 1823-26.)

## II.    Analysis

### A.    Standard of Review

We must first decide what standard of review to apply to the District Court's willfulness instruction. Under Federal Rule of Criminal Procedure 30, a party's failure to object limits our review to whether the District Court committed a plain error. Fed. R. Crim. P. 30(d); 52(b). The Government argues that Shvets did not object to the jury instruction.

We agree. There is no evidence that Shvets' trial counsel objected to the use of

5

the final instruction on willfulness, either before or after the Court charged the jury. Instead, defense counsel stated that he "agree[d]" with the "willfulness" instruction argued for by the Government, thereby abandoning his prior argument for a stricter level of intent. Defense counsel did request in writing a "willfulness" instruction that would have required the Government to "prove that Natalya Shvets . . . knew of the existence and meaning of the statute and regulations which the government alleges made her conduct criminal." App. at 110. However, merely requesting the charge before the jury retires "[does not] preserve an objection to the instruction actually given by the court." *United States v. Pelullo*, 399 F.3d 197, 221 (3d Cir. 2005) (alteration in original) (quoting *Jones v. United States,* 527 U.S. 373, 388 (1999)). As a result of Shvets' failure to object, her claim may be reviewed only for plain error. *See United States v. Flores*, 454 F.3d 149, 156 (3d Cir. 2006) (citing Fed. R. Crim. P. 30; *Gov't of the Virgin Islands v. Knight*, 989 F.2d 619, 631 (3d Cir. 1993)).

### B. Plain Error Analysis

Under the plain error standard, we may reverse the District Court's ruling only if (1) an error occurred, (2) the error was plain, and (3) the error "affected the defendant's substantial rights." *United States v. Syme*, 276 F.3d 131, 143 n.4 (3d Cir. 2002) (alteration in original) (quoting *United States v. Nappi,* 243 F.3d 758, 762 (3d Cir. 2001)). An "error" by a trial court is "[a] deviation from a legal rule in circumstances in which the legal rule has not been waived." *Govt. of Virgin Islands v. Rosa*, 399 F.3d 283, 290 (3d Cir. 2005) (citing *United States v. Olano*, 507 U.S. 725, 732-33 (1993)).

6

### i. Waiver

Shvets did not waive her objection to the willfulness instruction—she merely forfeited it. "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *Olano*, 507 U.S. at 733 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Unlike waiver, forfeiture does not preclude review: "[W]hen a legal rule has been waived, an appeal based upon the nonadherence to that legal principle is precluded. If, however, the correct application of the rule merely was 'forfeited,' Rule 52(b) provides a basis for review." *Rosa*, 399 F.3d at 290 (footnote omitted); *see also* Fed. R. Crim. P. 30(d) (allowing review pursuant to Rule 52(b) when counsel fails to object). Since the record evidences that Shvets' counsel merely acquiesced to, and did not specifically request, the willfulness instruction as given by the trial court, we may reach the merits of her argument. *Cf. United States v. Holmes*, 607 F.3d 332, 335 (3d Cir. 2010).

### ii. Willfulness

The jury instruction for "willfully" used by the trial court was not erroneous. Section 1347 makes it illegal to "knowingly and willfully . . . defraud any health care benefit program." Although "willfully" is a "notoriously slippery term," *United States v. Starnes*, 583 F.3d 196, 210 (3d Cir. 2009) (citation omitted), it is generally defined as "act[ing] with knowledge that [one's] conduct was unlawful." *Bryan v. United States*, 524 U.S. 184, 192 (1998) (quoting *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994)).

The proper definition of "willfully" under § 1347 hinges primarily on the nature of

7

a 2010 amendment to the statute, which states that "[w]ith respect to violations of this section, a person need not have actual knowledge of this section or specific intent to commit a violation of this section." 18 U.S.C. § 1347(b). The pre-2010 version of § 1347, under which Shvets was charged and convicted, does not contain this provision and is silent as to the definition of willfulness under the statute. Therefore, the question is whether the 2010 amendment represents a substantive change in the statute's *mens rea* requirement, or whether it was merely clarifying in nature.

As conceded by Shvets' trial counsel, the legislative history of the 2010 amendment forecloses Shvets' current argument that § 1347 requires proof of the defendant's knowledge of the statute. *See* 155 Cong. Rec. S10853 (daily ed. Oct. 28, 2009) (statement of Sen. Kaufman) ("The bill . . . addresses confusion [and] . . . clarifies that 'willful conduct' in this context does not require proof that the defendant had actual knowledge of the law in question or specific intent to violate that law."). And the weight of the case law interpreting § 1347 and the analogous Anti-Kickback statute, 42 U.S.C. § 1320a-7b, only strengthens this conclusion. *See United States v. Davis*, 132 F.3d 1092, 1094 (5th Cir. 1998) (requiring "specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law"); *United States v. Starks*, 157 F.3d 833, 837–39 (11th Cir. 1998) (holding that knowledge of the Anti-Kickback statute was not required); *United States v. Jain*, 93 F.3d 436, 440-41 (8th Cir. 1996) (requiring proof that the defendant "knew that his conduct was wrongful, rather than proof that he knew it violated a known legal duty"); *United States Baystate Ambulance &*

8

*Hosp. Rental Serv., Inc.*, 874 F.2d 20, 33 (1st Cir. 1989) (holding that "willfully" means to do something the law prohibits).

The only court of appeals to find that the pre-2010 version of § 1347 or the Anti-Kickback statute required a heightened level of intent is the Ninth Circuit. *See Hanlester Network v. Shalala*, 51 F.3d 1390, 1400 (9th Cir. 1995) (holding that "knowingly and willfully" in the Anti-Kickback statute required defendants to have knowledge of the statute and "specific intent to disobey the law"). However, the 2010 amendment to § 1347 rejected this interpretation, codifying the majority view. *See* 155 Cong. Rec. S10853 (daily ed. Oct. 28, 2009) (statement of Sen. Kaufman) ("This heightened mental state requirement may be appropriate for criminal violations of hyper-technical regulations, but it is inappropriate for these crimes, which punish simple fraud.").

The District Court's willfulness instruction was not erroneous. But even if it were, any such error was not "plain" as is required for us to reverse under the plain error standard. Because there was no plain error in this case, it is unnecessary to examine whether Shvets' "substantial rights" were affected by the instruction as given.

## III.    Conclusion

For the foregoing reasons, we deny Shvets' appeal and affirm the judgment of conviction of the District Court.