**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1843
_____

UNITED STATES OF AMERICA

v.

MICHAEL HENDRICKSON,
                                        Appellant

_____

APPEAL FROM THE DISTRICT COURT
OF THE VIRGIN ISLANDS
(D.C. No. 3-18-cr-00034-001)
District Judge: Hon. Curtis V. Gomez
_____

Submitted Pursuant to L.A.R. 34.1(a)
December 13, 2019
_____

Before: SMITH, <u>Chief Judge</u>, MCKEE, and SHWARTZ,
<u>Circuit Judges</u>.

(Filed:  February 3, 2020)

_____

OPINION

_____


Everard E. Potter, I.
Office of United States Attorney
5500 Veterans Drive
United States Courthouse, Suite 260
St. Thomas, VI 00802


        Counsel for Appellee


Melanie Turnbull
Gabriel J. Villegas
Office of Federal Public Defender
1336 Beltjen Road
Suite 202, Tunick Building
St. Thomas, VI 00802

        Counsel for Appellant


SHWARTZ, Circuit Judge.

        Michael Hendrickson appeals his conviction for possession of contraband in prison, arguing that the evidence was insufficient to prove that he possessed a "prohibited object," 18 U.S.C. § 1791(a)(2), (d)(1)(F), or that he was an

2

"inmate of a prison," id. § 1791(a)(2), (d)(4). Because the evidence was sufficient, we will affirm.

I

Hendrickson was a pretrial detainee held on territorial charges in the custody of the Virgin Islands Bureau of Corrections ("BOC"). The facility where Hendrickson was held houses both federal and territorial offenders, based on an agreement that the BOC has with the United States Marshals Service ("USMS").

During a routine pat-down, a corrections officer found a cell phone in Hendrickson's pocket. When the phone was activated, it displayed an AT&T logo and asked for a password. The phone, however, was missing its SIM card, a removable chip that allows the phone to connect to a cellular network. Without the SIM card, the phone was unable to receive calls and could make calls only to 911. Hendrickson told the corrections officer that he had been using the phone as "an MP3 player," a device used to play music. App. 109. Because the phone was password-protected, the Government did not search the phone for text messages, emails, or other data.

A jury found Hendrickson guilty of possession of prison contraband under 18 U.S.C. § 1791(a)(2). The District Court denied Hendrickson's motions for a judgment of acquittal under Federal Rule of Criminal Procedure 29. Hendrickson appeals.

II[1]

Hendrickson challenges the sufficiency of the evidence underlying his conviction,[2] arguing that no reasonable juror could find that (1) the phone he possessed was a "prohibited object," 18 U.S.C. § 1791(a)(2), (d)(1)(F), or (2) he was "an

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3241 and 48 U.S.C. § 1612. We have appellate jurisdiction under 28 U.S.C. § 1291.

[2] We review a sufficiency challenge de novo. United States v. Pavulak, 700 F.3d 651, 668 (3d Cir. 2012). When deciding such a challenge, we apply a "particularly deferential standard of review." United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998). We review the record "in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt[] beyond a reasonable doubt." United States v. Caraballo-Rodriguez, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) (alteration in original). "We do not weigh evidence or determine the credibility of witnesses in making this determination." United States v. Gambone, 314 F.3d 163, 170 (3d Cir. 2003). Rather, we view the evidence as a whole and "ask whether it is strong enough for a rational trier of fact to find guilt beyond a reasonable doubt." Caraballo-Rodriguez, 726 F.3d at 430.

4

inmate of a prison," id. § 1791(a)(2), (d)(4).  Both claims lack merit.

A

1

The prison-contraband statute, 18 U.S.C. § 1791, provides, in relevant part, that "[w]hoever . . . being an inmate of a prison . . . possesses . . . a prohibited object . . . shall be punished" as provided in the statute.  18 U.S.C. § 1791(a)(2). "[P]rohibited object[s]" include "a phone or other device used by a user of commercial mobile service (as defined in section 332(d) of Title 47) in connection with such service."  Id. § 1791(d)(1)(F).  Section 332 is part of the Communications Act.  The Act defines a "commercial mobile service" as, generally speaking, a for-profit service that provides wireless access to the network of ten-digit telephone numbers used by most phones in North America.[3]  See 47 U.S.C. § 332(d)(1) (defining "commercial mobile service" as a "mobile service . . . that is provided for profit and makes interconnected service available" to the public or other large group of users); id. § 153(33) (defining "mobile service" as "a radio communication service" carried on between various stations or receivers); id. § 153(40) (defining "radio communication" as "the transmission by radio of writing, signs, signals, pictures, and sounds"); id. § 332(d)(2) (defining "interconnected service" as a "service that is interconnected with the public switched network"); Mozilla Corp. v. F.C.C., 940 F.3d 1, 36

---

[3] We do not opine whether this is the exclusive type of service contemplated by the term "commercial mobile service" in the Communications Act.

(D.C. Cir. 2019) (noting that regulations have defined the "public switched network" as, broadly speaking, a network that provides access to the ten-digit, North American telephone-numbering system (citing In re Restoring Internet Freedom, 33 FCC Rcd. 311, ¶ 66)).

In this case, we must determine whether the item that Hendrickson possessed was a "phone or other device used by a user of a commercial mobile service . . . in connection with such service." 18 U.S.C. § 1791(d)(1)(F). Hendrickson argues that a phone is a prohibited object under this provision only if its commercial mobile service functions have previously been used and that his conviction should be reversed because there was no evidence that he ever used these functions. We disagree.

Hendrickson's argument depends on reading the word "used" in the phrase "phone or other device used by a user of commercial mobile service . . . in connection with such service," 18 U.S.C. § 1791(d)(1)(F), to mean "previously used." Depending on the context, the past participle "used" can either (1) indicate the past tense of the verb "to use," meaning that the applicable "device" must be one that was previously used in connection with commercial mobile service, or (2) serve as an adjective to describe the type of device covered by the statute, meaning that the "device" must be one that is generally used in connection with commercial mobile service. See Bernal v. NRA Grp., LLC, 930 F.3d 891, 895 (7th Cir. 2019) (explaining that past participles can either "refer[] to a completed event" or "describe[] the present state of the nouns they modify," depending on context (citing Henson v. Santander Consumer USA Inc., 137 S. Ct. 1718, 1722 (2017);

6

Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc., 554 U.S. 33, 41 (2008))).

The indefinite article "a" in the phrase "a user" implies that the word "used" in § 1791(d)(1)(F) is an adjective describing the type of "device" covered by the statute. 18 U.S.C. § 1791(d)(1)(F). The indefinite article has a "generalizing force" on the noun that follows it, "user." Campos-Hernandez v. Sessions, 889 F.3d 564, 570 (9th Cir. 2018); see Am. Bus Ass'n v. Slater, 231 F.3d 1, 4-5 (D.C. Cir. 2000) (citing, inter alia, Blacks Law Dictionary 1477 (6th ed. 1990)). It indicates that the phrase "a user" refers to users generally, rather than to one particular user. See Shamokin Filler Co. v. Fed. Mine Safety & Health Review Comm'n, 772 F.3d 330, 336 (3d Cir. 2014) (explaining that the phrase "the coal mine" refers to one "particular place," whereas the phrase "a coal mine" refers to "a typical, paradigmatic, 'usual' coal mine" (quoting RNS Servs., Inc. v. Sec'y of Labor, 115 F.3d 182, 185 (3d Cir. 1997))); see also McFadden v. United States, 135 S. Ct. 2298, 2304 (2015) ("When used as an indefinite article, 'a' means '[s]ome undetermined or unspecified particular.'" (quoting Webster's New International Dictionary 1 (2d ed. 1954))); United States v. Alabama, 778 F.3d 926, 932-35 (11th Cir. 2015) (interpreting the article "a" as a synonym for "any"); cf. Garcia v. Sessions, 856 F.3d 27, 36 (1st Cir. 2017) ("As a matter of grammar, the word 'any' is not clearly more sweeping than is the word 'an.'"), cert. denied, 138 S. Ct. 2652 (2018). The reference to "a typical, paradigmatic" user, Shamokin Filler Co., 772 F.3d at 336, indicates that Congress was focused on how the device is typically or commonly used, not whether the device had previously been used. Thus, contrary to Hendrickson's argument, § 1791(d)(1)(F) requires only that the applicable

device be one generally used for commercial mobile service. It does not require proof that the inmate—or anyone else— actually used the device's commercial mobile service functions.[4]

---

[4] We also conclude that the word "used" is an adjective because reading it as a past-tense verb would produce anomalous results. The first subsection of § 1791(a) makes it a crime for any person to, "in violation of a statute or a rule or order issued under a statute, provide[] to an inmate of a prison a prohibited object." 18 U.S.C. § 1791(a)(1). This provision has been invoked to prosecute guards and members of the public for passing contraband to prison inmates. See, e.g., United States v. Akers, 476 F.3d 602, 603-04 (8th Cir. 2007); United States v. Long, 122 F.3d 1360, 1361 (11th Cir. 1997). If "used" were a past-tense verb, then a visitor who slipped a cell phone to an inmate could not be convicted unless the Government could show that the device had previously been "used" in connection with its commercial mobile service capabilities. What a person does with a phone before it is passed to a prison inmate, however, is of little concern to prison safety, compared with the threat that a phone poses once inside the prison. Reading "used" as a past-tense verb, therefore, does not fit the statute's purpose. See Dolan v. U.S. Postal Serv., 546 U.S. 481, 486 (2006) ("Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.").

In sum, § 1791(d)(1)(F) prohibits the possession by inmates of devices, including cell phones, generally used to access commercial mobile service.[5, 6]

---

[5] The words "or other" between the words "phone" and "device" show that a "phone" is an example of the type of device that the statute covers. 18 U.S.C. § 1791(d)(1)(F). The word "other" usually indicates that the term that follows it is "of the same kind as the item or person already mentioned." Other, Cambridge English Dictionary (2019) (online edition) ("Other can be used at the end of a list to show that there are more items without being exact about what they are."); see also Other, Oxford English Dictionary § A.5.c (2019) (online edition). Put differently, the word "other" often follows a specific example of the more general term that comes after it. See, e.g., 18 U.S.C. § 1726 (prohibiting unlawful collection of postage by "a postmaster or other person authorized to receive the postage of mail matter"); id. § 1752(c)(1)(B) (referring to "the President or other person protected by the Secret Service"). The word "other" in § 1791(d)(1)(F) thus reflects Congress's identification of a "phone" as an example of a "device used by a user of commercial mobile service . . . in connection with such service." 18 U.S.C. § 1791(d)(1)(F).

Reading the entire clause, including the reference to commercial mobile service, further reveals that the word "phone" in § 1791(d)(1)(F) encompasses cell and mobile phones. Compare Mozilla, 940 F.3d at 36 (noting that the definition of "commercial mobile service" includes a service that uses radio signals to make the telephone network available to the public (citing 47 U.S.C. § 332(d)(1)-(3) and In re Restoring Internet Freedom, 33 FCC Rcd. 311, ¶ 66)), with Cell Phone, Oxford English Dictionary (defining "cell phone"

9

The evidence established that Hendrickson possessed a "phone" within the meaning of § 1791(d)(1)(F). When a corrections officer found the phone on Hendrickson, the officer called an electronics technician, who confirmed that the device was "definitely" a phone. App. 108. A federal agent later examined the device, verified that it was able to power on, observed that it displayed an AT&T logo when starting up, and successfully made a call to 911 on it. See United States v. Vera-Porras, 612 F. App'x 402, 405 (8th Cir. 2015) (rejecting defendant's sufficiency challenge to this element and citing, inter alia, the T-Mobile logo on the phone and the jury's "common sense that an operational cell phone bears the logo of its commercial carrier"). This provided evidence sufficient

---

as "a portable wireless telephone that transmits and receives signals via a cellular network"), and City of Jefferson City v. Cingular Wireless, LLC, 531 F.3d 595, 607 (8th Cir. 2008) (collecting definitions of "cell phone" and "telephone"). We express no view as to whether the word "phone" in § 1791(d)(1)(F) encompasses devices other than cell and mobile phones.

[6] We are aware of only one appellate case that has construed § 1791(d)(1)(F), United States v. Vera-Porras, 612 F. App'x 402, 405 (8th Cir. 2015). The opinion in that case assumed, without analysis, that a phone's commercial mobile service functions must previously be "used" for the phone to be contraband—but the case made this assumption only because the evidence that the phone had previously been so used was overwhelming. See id. Vera-Porras, therefore, does not meaningfully inform our interpretation of the statute.

for a reasonable juror to conclude that the device confiscated from Hendrickson was a phone, as defined by § 1791(d)(1)(F).[7]

For these reasons, the District Court correctly denied Hendrickson's motion for a judgment of acquittal because the evidence was sufficient to prove that he possessed a "prohibited object" under § 1791(d)(1)(F).

B

1

Hendrickson also argues that the evidence was insufficient to prove that he was an "inmate of a prison," as defined under § 1791, because he was, at the time of the offense, detained on territorial charges in a territorial facility. In Hendrickson's view, the statute applies only to inmates detained on federal charges or to inmates detained in federal facilities. We disagree.

To establish a violation of § 1791(a)(2), the Government must prove, among other things, that the defendant was "an inmate of a prison." 18 U.S.C. § 1791(a)(2). Section 1791(d)(4) defines a "prison" as "a Federal correctional, detention, or penal facility or any prison,

---

[7] Additionally, the jury heard evidence that the phone was password-protected and that a SIM card can be "[v]ery easily removed and very easily hidden." App. 113. From this, a reasonable juror could infer that the phone had a user who sought to protect its use and that the phone had contained a SIM card and, therefore, was capable of accessing commercial mobile service.

11

institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the Attorney General." 18 U.S.C. § 1791(d)(4). This term does not require the defendant to be detained pursuant to federal charges or to be detained in a federal facility. Rather, the defendant need only be detained in a facility in which federal prisoners are held. See id. § 1791(d)(4). This language reflects Congress's intent to extend the reach of § 1791 beyond federal prisoners and to capture the fellow inmates of federal prisoners.

An examination of § 1791's earlier iterations confirms this conclusion. From 1986 until 2006, § 1791(d)(4) defined the term "prison" as "a Federal correctional, detention, or penal facility." 18 U.S.C. § 1791 (1988) (amended 2006). A 2006 amendment with the header "[e]xpanded jurisdiction for contraband offenses in correctional facilities" added to the end of § 1791(d)(4) the words "or any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the Attorney General." Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, tit. XI, § 1178, 119 Stat. 2960, 3126 (2006). This amendment makes clear that Congress intended to extend the statute's reach beyond federal prisoners and federal facilities.[8]

_____

[8] When the federal criminal code was first codified into Title 18, § 1791 applied to any "Federal penal or correctional institution." An Act to Revise, Codify, and Enact into Positive Law Title 18 of the United States Code, Pub. L. No. 80-772, ch. 645, § 1791, 62 Stat. 683, 786 (1948). A 1984 amendment replaced the word "institution" with the word "facility" (along with other changes to the statute). See Continuing

This conclusion finds further support in the fact that § 1791(d)(4) differs from other definitions of the term "prison" in the federal criminal code. Section 1792, for example, prohibits prisoners from causing mutinies or riots, but it applies only to "Federal penal, detention, or correctional facilit[ies]." 18 U.S.C. § 1792. Other statutes follow a similar pattern. See, e.g., id. § 1072 ("Whoever willfully harbors or conceals any prisoner after his escape from the custody of the Attorney General or from a Federal penal or correctional institution, shall be imprisoned not more than three years."). This shows that Congress knows how to limit the reach of the criminal law to federal prisoners and federal facilities when it wishes to do so. See United States v. Davis, 139 S. Ct. 2319, 2329 (2019) (interpreting statutory language in light of "the broader context of the federal criminal code").

There are also sound reasons for applying the contraband statute to all inmates in all facilities where federal prisoners are held. In addition to cell phones, § 1791 prohibits inmates from possessing firearms, destructive devices, weapons, and drugs. See 18 U.S.C. § 1791(d)(1)(A)-(D). Such contraband, when possessed by the co-inmates of federal prisoners—regardless of whether those co-inmates are

Appropriations for Fiscal Year 1985, Pub. L. No. 98-473, § 1109(a), 98 Stat. 1837, 2147-48 (1984). The definition was amended again in 1986, when it was revised to "a Federal correctional, detention, or penal facility." Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. No. 99-646, § 52(a), 100 Stat. 3592, 3607 (1986). That remained the definition until the 2006 amendment. This history reflects that Congress acted purposefully in expanding the reach of § 1791 through the 2006 amendment.

13

themselves federal prisoners—endangers the safety of those federal prisoners. Ensuring the safety of federal prisoners and those who guard them, regardless of where the federal prisoners are housed, is a goal advanced through the 2006 amendment. Cf. United States v. Comstock, 560 U.S. 126, 137, 143 (2010) (referring to "Congress' power to act as a responsible federal custodian," which includes enacting laws for the safety of federal prisoners).

For these reasons, we hold that the term "inmate of a prison" in § 1791(a)(2) is not limited to federal prisoners or to prisoners in federal facilities.[9]

2

The evidence shows that Hendrickson was an "inmate of a prison" under § 1791. At trial, a Deputy with the USMS

---

[9] We previously stated in dicta that § 1791 "applies only to federal prisons." United States v. Holmes, 607 F.3d 332, 336 (3d Cir. 2010). There, the question was whether an additional scienter requirement should be read into a part of the statute that prohibits the possession of weapons. See id. at 335-36. We rejected the defendant's argument because it was divorced "from any conceivable congressional concerns related to the presence of weapons in correctional institutions." Id. at 336. Specifically, we stated that the statute's scienter requirements should be read narrowly because the statute "applies only to federal prisons," where prison safety concerns are paramount. Id. This statement, which was made without any analysis of the text of § 1791(d)(4) and which was not essential to the case's holding, pertains to the safety concerns of prisons generally, not just federal prisons.

14

testified that the USMS has a contract with the Virgin Islands BOC to house prisoners at Hendrickson's facility. He also testified that federal inmates are housed at Hendrickson's facility and that he routinely transports these prisoners to and from the facility for federal court appearances. This evidence provided a sufficient basis for a reasonable juror to find that Hendrickson was an inmate of a facility where persons were held "in custody by direction of or pursuant to a contract or agreement with the Attorney General." 18 U.S.C. § 1791(d)(4).[10] Accordingly, Hendrickson was properly found to be an "inmate of a prison," as § 1791(a)(2) requires.

## III

For the foregoing reasons, we will affirm.

---

[10] Hendrickson does not dispute that a prisoner agreement signed by the USMS is the equivalent of one signed by the "Attorney General" for purposes of § 1791(d)(4). See 28 U.S.C. § 561 (specifying that the USMS is a "bureau within the Department of Justice under the authority and direction of the Attorney General").

15