# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 20-3322

———————————————

United States of America

*Plaintiff - Appellee*

v.

Isiah Dozier

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Eastern District of Arkansas - Central

——————————

Submitted: September 24, 2021
Filed: April 13, 2022

——————————

Before SHEPHERD, WOLLMAN, and KOBES, Circuit Judges.

——————————

KOBES, Circuit Judge.

A jury convicted Isiah Dozier, Jr. of possessing prohibited objects in prison, 18 U.S.C. § 1791(a)(2). On appeal, he challenges: (1) the district court's[1]

———————————

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

evidentiary rulings; (2) a jury instruction; and (3) the sufficiency of the evidence. We affirm.

I.

When Dozier's family visited him in prison, Dozier went to the restroom. The supervising corrections officer, Jimmy Skinner, checked the bathroom after Dozier left and found a capful of petroleum jelly. He suspected that Dozier's family had given him contraband, and that Dozier had hidden it in his rectum. After the visit, Skinner strip searched Dozier, but didn't find contraband. Skinner went to get the code for the body scanner from the lieutenant's office, bringing Dozier along and telling him to wait outside. When Skinner came out of the office, he noticed another inmate, Larry Jones, walking away from Dozier. He also saw Dozier fidgeting around his legs. Skinner told Jones to come back. As he turned, Jones dropped two objects from his hand. Skinner retrieved both—two bundles later found to contain meth, marijuana, and a cell phone. Dozier was taken to a special housing unit, where he was not allowed to wear his own clothes or shoes.

Corrections staff reviewed surveillance footage, which showed Dozier taking the bundles out of his shoes and giving them to Jones. Bureau of Prisons employee William Wright got Dozier's shoes from the special housing unit property room and noticed a compartment cut into the sole of the left shoe. Based on the video, their own observations, and the shoes, BOP staff believed that Dozier's father gave him the contraband, which he hid in his shoe and then passed off to Jones.

Dozier was charged with three counts of possessing a prohibited object in prison. Before trial, the government filed a motion *in limine* to exclude testimony by BOP employee Tracy Holst about the BOP administrative investigation and hearing on the incident because it was irrelevant and unduly prejudicial. The district court granted the motion over Dozier's objection. At trial, Dozier objected to the shoes being admitted into evidence, arguing that the government couldn't lay a proper foundation that they were in substantially the same condition as they were on

the date of the incident. He also objected to the jury instruction that the jury need not find that Dozier knew specifically what prohibited objects he possessed, so long as he knew that he possessed some prohibited object. Finally, he renewed his objection to the exclusion of Holst's testimony. The district court overruled all three objections, and the jury convicted Dozier on all three counts. Dozier moved for a judgment of acquittal, which the district court denied. Dozier appeals.

## II.

The district court excluded testimony from BOP employee Tracy Holst about the prison administrative hearing. Dozier claims that excluding his sole witness violated his Fifth and Sixth Amendment right to put on a complete defense. "We review evidentiary rulings for an abuse of discretion, but our review is de novo when the challenge implicates a constitutional right." *United States v. Espejo*, 912 F.3d 469, 472 (8th Cir. 2019) (citation omitted). A criminal defendant's "right to present relevant testimony is not without limitation." *United States v. Petters*, 663 F.3d 375, 381 (8th Cir. 2011) (citation omitted). A defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Id.* (citation omitted). "[T]he Constitution leaves to the [district court] wide latitude to exclude evidence that is repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues." *Id.* (citation omitted) (cleaned up). "Even where an evidentiary ruling is an abuse of discretion or violates a constitutional proscription, however, we will not reverse unless the error is more than harmless in that it affected a substantial right or had more than a slight influence on the verdict." *Espejo*, 912 F.3d at 472 (citation omitted).

Tracy Holst is the BOP Division Hearing Officer who made the administrative decision not to discipline Dozier. According to Dozier, Holst would have testified (1) that the BOP conducted an administrative investigation into the incident, and (2) that he had decided that there wasn't enough evidence to discipline Dozier for possession of prohibited items. He also would have (3) described the evidence

presented at the administrative hearing, as well as (4) his interpretation of what happened in the surveillance video.

None of this testimony was admissible. The administrative investigation and its outcome are inadmissible under Federal Rule of Evidence 403, which permits the district court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The fact that Dozier wasn't subjected to administrative discipline is of little probative value at trial, since the procedures, protections, and standards of proof at play in an administrative context are different from those in a criminal trial. And whatever probative value it might have is substantially outweighed by the danger that the testimony would be unfairly prejudicial or mislead the jury. As the district court put it,

> [T]he decisions of the administrative hearing officer does not in any way impact what this jury should do. If the administrative officer found you guilty, then the jury can't listen to that because that means they would come in here and listen to that and find you guilty because they heard somebody else found you guilty. . . . [T]he same thing happens if the administrative officer finds you not guilty. Then you come in here and put it before the jury and the jury says: Why are we here? He was found not guilty, he's not guilty, [even though] the standards [at the hearing] are different [from trial]."

D. Ct. Dkt. 88, at 389.[2]

---

[2]Dozier argues that testimony that an administrative investigation occurred was appropriate to contradict a government witness's incorrect statement on cross examination that there was no administrative investigation. But the district court had already excluded that entire line of inquiry when it granted the government's motion *in limine*, so it was not admissible for this purpose.

-4-

Testimony about evidence presented at the administrative hearing is also inadmissible under Rule 403. There was no evidence presented at the hearing that couldn't be presented at trial. What little probative value testimony describing that evidence had would be substantially outweighed by the danger of needlessly presenting cumulative evidence.

We also note that Dozier never told the district court that he wanted Holst to testify about his interpretation of the surveillance video. When a party fails to timely and clearly state the grounds for the objection, the argument is forfeited, and we review only for plain error. *United States v. Pirani*, 406 F.3d 543, 549 (8th Cir. 2005). Dozier "must show that there is (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Ford*, 888 F.3d 922, 926 (8th Cir. 2018) (citations omitted). Dozier fails on the first prong because the proposed testimony was inadmissible. Opinion testimony by a lay witness is only admissible if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge . . . ." Federal Rule of Evidence 701. Holst's testimony fails under Rule 701(b)—Holst, who was not involved in the incident and who only watched the video during the administrative proceeding, was in no better position to know what was going on than the jury, which could watch the surveillance video for itself.

III.

Dozier next challenges the admission of the shoes. He argues that the government did not lay the necessary foundation because there was no testimony that the shoes presented at trial were in the same condition as day of the offense. Before physical evidence is offered in a criminal prosecution, there must be testimony that the object is the same one that was involved in the alleged incident, and that its condition is substantially unchanged. *United States v. Robinson*, 617 F.3d 984, 990 (8th Cir. 2010). The district court can admit evidence if it is satisfied that there is a reasonable probability that it hasn't been altered. *Id.* (citation omitted).

We presume that evidence is unchanged unless there is "a showing of bad faith, ill will, or proof that the evidence has been tampered with." *Id.* (citation omitted).

Dozier turned over his shoes when he was taken to the special housing unit. Lieutenant Andrews testified that he watched as the shoes were secured in a property bag, and that the bag would have been kept in a secure area. William Wright, the BOP employee who discovered the compartment in the shoes, testified that he retrieved the shoes from a property bag that was marked with Dozier's identification. Because Dozier didn't present any evidence that would rebut the presumption that the shoes were unchanged, the district court didn't abuse its discretion in finding that there was a reasonable probability that the shoes were not altered.

IV.

Dozier also says that the district court gave an incorrect jury instruction. The district court told the jury that Dozier "need not know what the prohibited object is if he knows that he has possession of some prohibited object." "Although we generally review jury instructions for abuse of discretion, if as here statutory interpretation is required, it is an issue of law that we consider *de novo*." *United States v. Krause*, 914 F.3d 1122, 1127 (8th Cir. 2019) (citation omitted). 18 U.S.C. § 1791(a)(2) says: "Whoever being an inmate of a prison, makes, possesses, or obtains, or attempts to make or obtain, a prohibited object shall be punished as provided in subsection (b) of this section." Subsection (b) outlines punishment schemes that differ depending on what the prohibited object was.

Dozier challenges the district court's interpretation of the *mens rea* requirement. The statute is silent on the mental state required to commit the offense, but neither party disputes that we read in a "knowing" *mens rea* when we're interpreting § 1791. *See Staples v. United States*, 511 U.S. 600, 605–06 (1994). The question is whether the government had to prove that Dozier knew he possessed the *specific* prohibited objects (meth, marijuana, and a cell phone), rather than just that

he had to know that he possessed *some* prohibited object, even if he didn't know exactly what he had.

This is an issue of first impression in this circuit. We find the Third Circuit's reasoning in *United States v. Holmes*, 607 F.3d 332 (3d Cir. 2010), persuasive. There, an inmate was convicted under the same statute as Dozier for possessing a utility knife blade. *Id.* at 334. On appeal, he argued that the government had to prove he knew that the blade was a weapon, not just that he knew he possessed the blade. *Id.* at 336. The Third Circuit disagreed. *Id.* Finding no guidance in the statute's text or structure, the court cited prisons' strong needs to ensure safety and security as evidence that the statute should properly be read to criminalize possessing a blade, even if the defendant didn't know the item fit within the statutory definition of "weapon." *Id.* It also rejected the defendant's argument that this reading criminalizes otherwise innocent conduct, since § 1791 applies only in federal prisons, and inmates are well aware that the items they can possess are strictly regulated. *Id.* at 337.

We agree with the Third Circuit. Introducing drugs and cell phones into prison is a serious security threat. Controlled substance use endangers both inmates and prison staff, and cell phones can be used to arrange delivery of drugs and weapons, order hits, and coordinate escapes. Even if a prisoner sincerely believes that he possesses a less dangerous prohibited object—only marijuana, for example, instead of meth—it doesn't change the nature of the danger presented in the prison. And there's nothing "otherwise innocent" about smuggling contraband into a prison, be it a cell phone or methamphetamine.

Dozier argues that we should read in a knowing *mens rea* as to the specific identity of the prohibited item possessed, because different prohibited objects carry different maximum penalties under 18 U.S.C. § 1791(b). For instance, the maximum penalty for possessing meth is 20 years in prison; only five years for marijuana; and just one year for a cell phone. *Id.* Without this *mens rea* requirement, Dozier says, we violate the rule that any fact that increases the maximum penalty

must be proven beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000). But there is no *Apprendi* violation here because the jury found that Dozier did, in fact, possess each item charged. And we are not required to attach the same *mens rea* requirement to each element of a crime. *Staples v. United States*, 511 U.S. 600, 609 (1994).

Accepting Dozier's interpretation would allow inmates to make an end-run around the statute by claiming that they didn't know exactly what prohibited item they possessed. We have rejected interpretations this outcome in the context of other federal criminal statutes. For example, in *United States v. Martin*, 274 F.3d 1208, 1210 (8th Cir. 2001), we held that possession with intent to distribute meth under the Controlled Substances Act, 21 U.S.C. § 802, did not require that the defendant know "the exact nature of the substance in his possession, only that it was a controlled substance of some kind." *See also United States v. Noibi*, 780 F.2d 1419, 1421 (8th Cir. 1986) ("The 'knowingly' element of [21 U.S.C. § 841] refers to a general criminal intent, i.e., awareness that the substance possessed was a controlled substance of some kind.").

Because an inmate charged under 18 U.S.C. § 1791(a)(2) need not know specifically what prohibited item he has, so long as he knows that he possesses a prohibited object, the district court's jury instructions were proper.

V.

Finally, Dozier argues that the evidence was insufficient to support the finding that he "knowingly" possessed drugs and a cell phone. As discussed in Part III, *supra*, an inmate does not need to know specifically what he possesses, so long as he knows that it's prohibited. So the question on appeal is whether there was sufficient evidence for the jury to find that Dozier knew he possessed contraband. "We review the sufficiency of the evidence *de novo*, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Parks*,

902 F.3d 805, 814 (8th Cir. 2018) (citation omitted). We will only reverse if no reasonable jury could find guilt beyond a reasonable doubt. *United States v. Honarvar*, 477 F.3d 999, 1000 (8th Cir. 2007). "Our role is not to reweigh the evidence or to test the credibility of the witnesses, because questions of credibility are the province of the jury." *Parks*, 902 F.3d at 814–15 (citation omitted).

A reasonable jury could weigh this evidence and infer based on Dozier's efforts to conceal the packages that he knew they were prohibited. The jury watched the surveillance video that showed Dozier's entering the visitation room. He appeared to cup something in his hand when he greeted his son with a handshake and a hug—indicative of a surreptitious handoff. Skinner and Wright testified that they saw Dozier fiddling with his shoes before handing the bundles to Jones, and that the shoes had compartments cut into the soles. Jones testified that he was aware when Dozier handed him the packages that they contained contraband, although he didn't know exactly what was inside. And the government's expert testified that the packaging—tightly-wrapped electrical tape—was commonly used when smuggling contraband into prisons. The jury also had the benefit of seeing photos of the packages, surveillance video of the handoff to Jones, and the shoes themselves. All together, this was sufficient evidence.

VI.

We affirm.

_____